21953

Sara Wannamaker BURNETT, Robert L. Wannamaker, Charles Woods Wannamaker and William Franklin Wannamaker, Respondents, v. HOLLIDAY BROTHERS, INC., Appellant.

(305 S. E. (2d) 238)

*John C. Thompson,* of *Thompson, Henry & Lovelace;* and *John B. McCutcheon, Sr.,* of *McCutcheon & McCutcheon,* Conway, *for appellant.*

*W. Rhett Eleazer,* Columbia, *for respondents.*

July 13, 1983.

LITTLEJOHN, Justice:

The Petitioners in this action are the children and sole heirs at law of Sara R. Wannamaker, who died in July of 1948. They bring this action against Defendant Holliday Brothers, Inc.,

claiming title to Lot No. 1 of block I of the Floral Beach subdivision. They claim ownership because George J. Holliday, in 1928, executed a fee simple conveyance deed to this property to their mother.

The defendant, answering the complaint, alleged that it and its predecessors in title were purchasers of the property in question for valuable consideration without notice of the Petitioners' claim and that it and its predecessors in title have been in possession of the property for many years and that its title is not subject to the claim of the petitioners. It also set up in its Answer the defenses of laches and adverse possession, under the ten-year statute and the twenty-year statute.

The issues were referred to the Master in Equity for Horry County, who recommended that the Complaint be dismissed and that the court confirm title in the Defendant. Exceptions were taken to the Master's report and recommendations. The Circuit Judge rejected the recommendation of the Master and held that the Petitioners were owners in fee simple of the property in contest.

The brief order of the Circuit Judge somewhat summarily ruled for the Petitioners without any analysis of the Master's Report and without any contrary finding of fact. It was based on what the judge considered to be the "justice and equity" of the case. When the Master and the judge are in disagreement on factual findings, this Court "... may make findings in accordance with its own views of the preponderance or the greater weight of the evidence . . . ." *Townes Associates v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976). We have, in actuality, no findings of fact by the trial judge, but for the purpose of our ruling will assume his findings were contrary to those of the Master. We are in agreement with the Master on both the facts and the law, and accordingly, we reverse.

In 1928, George J. Holliday signed and delivered a deed to Lot No. 1 to Sara R. Wannamaker. It was recorded twenty-four years later, in 1952. The deed also included Lot No. 2, with which we are not concerned. George J. Holliday died testate in February of 1941. The Warrant of Appraisement filed with the Probate Court contained over one hundred fifty (150) separate references to lots, parcels, and tracts of land. Many of these separate references included more than one lot, parcel or tract. The property which is the object of this action, if

included in the Appraisement, was not identifiable. At the time of his death, the deed records reflected ownership of the subject property in him. All of his real estate was left to his two sons, Joseph William Holliday and John Monroe Holliday, who were executors of the will. His daughters faired poorly in the will, each of the five being entitled to only $5,000 cash. The daughters contested the will. In order to settle the claim of Elizabeth Holliday Allen, the two brothers deeded the subject property (Lot No. 1) to her in 1944; the deed was recorded in 1949. Elizabeth Holliday Allen, in turn, in 1953, deeded the property for a valuable consideration to E. C. and Annie M. Sanders; the deed was recorded in 1954. The Sanders, in 1969, deeded the property for consideration to the defendant corporation; the deed was recorded in 1970. The defendant, Holliday Brothers, Inc., is a family held corporation, held by Joseph W. Holliday and John M. Holliday and members of their families. It is through this chain of title that the defendant herein claims ownership.

We now recite the chain through which the Petitioners claim ownership. George J. Holliday, in 1928, signed and delivered a deed to the subject property to Sara R. Wannamaker. She died in 1948, leaving Petitioners as her heirs. This deed was not recorded until *1952*, which was four years after the death of the grantee. The record is silent as to who caused the deed to be recorded. The Master found, and we agree: "The record before me is again silent as to any activities, or asserted claims, or involvement of any kind on the part of the Petitioners with the property in question, until on or about the 6th day of June, 1977, when a Notice of Lis Pendens in this lawsuit was filed with the Clerk of Court in this County. It is somewhat singular that none of the Petitioners testified on their behalf .... Nowhere is there any evidence of use of the property, or control of the property, or the payment of any Taxes, or any attempt to exercise dominion of the property in any fashion."

We also agree with the Master when he said: "It is the contention of the Petitioners that Joseph W. Holliday, and John Monroe Holliday had actual knowledge, or notice, that George J. Holliday had transferred the property in question to Sara R. Wannamaker. The record does not establish this, and I so find and conclude."

The Master also found no evidence in the record to warrant a finding that John Monroe Holliday or Joseph W. Holliday or Elizabeth Holliday Allen or E. C. Sanders or Annie M. Sanders or any person having an interest in the defendant corporation had any actual knowledge of the 1928 deed to Sara R. Wannamaker until 1977. Each of the deeds through which the defendant claims were for a valuable consideration. Forbearance by Elizabeth Holliday Allen of her right to continue the pursuit of a contest of the will of her father was a valuable consideration.

We now print and adopt a portion of the Master's Report as our disposition of the legal issues.

"Turning for the moment to some of the legal principles involved in this matter, it should be noted that our Recording Statutes provide, among other things, that Conveyances of Lands shall be valid as to subsequent purchasers, without notice *only when recorded.* The recorded instrument shall be valid so as to affect the rights of subsequent purchasers, for valuable consideration, without notice only from the day and hour of recording. Section 30-7-10 of the *Code of Laws of South Carolina for 1976.* The purpose of the Recording Statute is to protect subsequent purchasers, for value without notice. *Epps v. McCallum Realty Company,* 139 S. C. 481, 138 S. E. 297 (1927). As the Cases repeatedly indicate, one who neglects to record Conveyances must suffer the consequences of his neglect.

"As to purchasers for value, without notice, our Court has indicated that a purchaser for value, without notice, is one who

(a) makes payment, or furnishes consideration before notice of an outstanding claim; [or]
(b) purchases and acquires title before notice of an outstanding claim; [or]
(c) makes a bona fide purchase and acquisition without notice.

*Jones v. Eichholz,* 212 S. C. 411, 48 S. E. (2d) 21 (1948); *Cook v. Knight,* 173 S. C. 278, 175 S. E. 506 (1934); and various other Cases cited in these Opinions.

.　.　.　.　.

"As I have indicated above, the Conveyance to Elizabeth Holliday Allen was not a gift, nor was it a Conveyance to her as a Devisee, or Legatee under her Father's Will; nor was it in fulfillment of any condition of her Father's Will. Moreover, it was not in satisfaction of any past indebtedness. Mrs. Allen, in my opinion, was a purchaser of the property in question for valuable consideration; and from that point of time on, the title to the property in question "is considered sacred in equity.'"

Counsel for the Petitioners argues, and with some appeal, that inasmuch as George J. Holliday had signed the deed in 1928 conveying the property, he thereafter and, in turn, his devisees thereafter, owned nothing to convey. Accordingly, it is argued that Elizabeth Holliday Allen received nothing. Where one conveys property away and subsequently signs another deed, this would always occur. There are many cases holding that a subsequent purchaser for value without notice gets good title, not because title remained in the grantor but because the grantor had a power to defeat the unrecorded deed. This power to defeat an unrecorded deed is not only in the grantor but is also in his devisees.

In an article by Professor David H. Means of the University of South Carolina Law School Faculty, published in the "South Carolina Law Quarterly" Vol. 10, No. 3 (1958), there is to be found an interesting discussion of the question. We find the following:

> Suppose that O conveys land to A by a deed which A fails to record. Thereafter O dies, whereupon B, in reliance upon O's title of record and without notice of the prior conveyance to A, purchases from O's heir or devisee. There is authority holding that in this situation the recording act does not protect B from A's unrecorded deed, on the theory that the conveyance to A having divested O of his Entire interest, O's heir or devisee therefore had nothing to convey to B. Such a result is not only unfortunate as a matter of policy, but also rests upon unsound reasoning. Accordingly, the view of the cases affording protection to B is to be preferred.

We agree with Professor Means that the view ". . . affording protection to B is to be preferred." *See generally, Reddoch v. Williams,* 129 Miss. 706, 92 So. 831 (1922) and cases cited in Annot. 65 A. L. R. 360 (1930). In these cases, there is no perfect

solution. Oftentimes, one of two innocent parties must suffer. The basic purpose of the rule normally followed is to assure stability of title. Any other rule would make title searching hazardous. A title searcher must live by the record.

Returning to the adopted portion of the Master's Report: "It would seem to me, in passing, that the Petitioners in this case may also be confronted with the problem of *Laches*. Under our Cases, the *Doctrine of Laches* simply denotes failure to act for some undue lapse of time, and neglect to act when there was an opportunity to have acted sooner. Where there is an unexplainable delay for an unreasonable length of time, one may be barred, or estopped. See *Stribling v. Fretwell*, 157 S. C. 297, 154 S. E. 415; *Bagwell v. Hinton*, 205 S. C. 377, 32 S. E. (2d) 147, and other cases.

"I have already noted above the extremely long lapse of time between the date of the Deed from Holliday to Wannamaker, and the recording of the Deed, as well as the lack of activity, or actions, on the part of the Petitioners and their predecessors, until sometime around 1977. The Lot in question apparently had some type of structure on it for quite some while, and there is at least the inference from the evidence that such improvement took place during the Holliday ownership. The only testimony with reference to payment of Taxes was that of Joseph W. Holliday, who testified in response to questions by Petitioners' Counsel, that they paid Taxes during the time it was owned.

"It is unnecessary, in my judgment, to go into the matter of adverse possession under those Defenses raised in the Respondent's Answer.

## CONCLUSION

"After review of the entire record in this case, and after duly considering the same, I find and conclude that the Respondent, Holliday Brothers, Inc., has title to the property involved in this litigation, and that it is the owner of the property, and its title is superior to that of the Petitioners, and is not subject to the claims of the Petitioners. I recommend, therefore, that the Court so declare and confirm the title of the Respondent, and that the Petition of the Petitioners be dismissed."

Reversed.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.