698 S.E.2d 214

Sara Mae ROBINSON, Mary Ann Campbell, James Scott, Ellis Scott, William Scott, Shirley Pinckney Hughes, Julius Steven Brown, Leon Brown, Annabell Brown, Loretta Ladson, Kathleen Brown, Mozelle B. Rembert, Patricia Frickling, Ruth Mitchell, Gwendolyn Dunn, Angela Hamilton, Geraldine Jameson, Remus Prioleau, Julius Prioleau, Anthony Prioleau, Judy Brown, Franklin Brown, Kathy Young, Kenneth Prioleau, Willis Jameson, Melvin Pinckney, William "Alonzie" Pinckney, Ruth Fussell, Hattie Wilson, Marie Watson, Gloria Becoat, Angela T. Burnett, and Lawrence Redmond, Petitioners,

v.

The ESTATE OF Eloise Pinckney HARRIS, Jerome C. Harris, as Personal Representative and sole heir and devisee of the Estate of Eloise P. Harris, Daniel Duggan, Mark F. Teseniar, Nan M. Teseniar, David Savage, Lisa M. Shogry–Savage, Debbie S. Dinovo, Martine A. Hutton, The Converse Company, LLC, Judy Pinckney Singleton, Mary Leavy, Michelle Davis, Leroy Brisbane, Frances Brisbane, and John Doe, Jane Doe, Richard Roe and Mary Roe, who are fictitious names representing all unknown persons and the heirs at law or devisees of the following deceased persons known as Simeon B. Pinckney, Isabella Pinckney, Alex Pinckney, Mary Pinckney, Samuel James Pinckney, Rebecca Riley Pinckney, James H. Pinckney, William Brown, Sara Pinckney, Julia H. Pinckney, Laura Riley Pinckney Heyward, Herbert Pinckney, Ellis Pinckney, Jannie Gathers, Robert Seabrook, Annie Haley Pinckney, Lillian Pinckney Seabrook, Simeon B. Pinckney, Jr., Matthew G. Pinckney, Mary Riley, John Riley, Richard Riley, Daniel McLeod, and all other persons unknown claiming any right, title, estate, interest or lien upon the real estate tracts described in the Complaint therein, Defendants,

of whom Debbie S. Dinovo is Respondent.

No. 26862.

Supreme Court of South Carolina.

Heard May 26, 2010.

Decided Aug. 16, 2010.

Donald Higgins Howe, of Howe & Wyndham, LLP, and Walter Bilbro, Jr., both of Charleston, for Petitioners.

William C. Cleveland, III, and John C. Hawk, IV, both of Buist, Moore, Smythe & McGee, of Charleston, for Respondent.

Charles M. Feeley, of Summerville, for Guardian Ad Litem.

Justice BEATTY.

In this heirs' property dispute, the Court granted the petition of Sara Mae Robinson and others ("Petitioners") for a writ of certiorari to review the decision of the Court of Appeals in *Robinson v. Estate of Harris,* Op. No. 2008–UP–647 (S.C. Ct.App. filed Nov. 24, 2008). In this opinion, the Court of Appeals affirmed a circuit court order that granted summary judgment in favor of Debbie S. Dinovo on the grounds Petitioners' action to set aside a 1966 quiet title action was barred by the three-year statute of limitations as established by section 15–67–90 of the South Carolina Code,[1] Dinovo is a bona fide purchaser for value without notice pursuant to the recording statute as established by section 30–7–10 of the South Carolina Code,[2] and Petitioners' action was barred by the doctrine of laches. We affirm.

---

**1.** Section 15–67–90 provides:

No judgment or decree quieting title to land or determining the title thereto, or adverse claims therein, shall be adjudged invalid or set aside for any reason, unless the action or proceeding to vacate or set aside such judgment or decree shall be commenced or application for leave to defend be made within three years from the time of filing for record a certified copy of such judgment or decree in the office of the clerk of court of the county in which the lands affected by such judgment or decree are situated or, in case of minors, within three years after coming of age.

S.C.Code Ann. § 15–67–90 (2005).

**2.** Section 30–7–10 provides in relevant part:

All deeds of conveyance of lands, tenements, or hereditaments, either in fee simple or for life ... and generally all instruments in writing conveying an interest in real estate required by law to be recorded ... are valid so as to affect the rights of subsequent ... purchasers for valuable consideration without notice, only from the day and hour when they are recorded in the office of the register of deeds or clerk of court of the county in which the real property affected is situated.

S.C.Code Ann. § 30–7–10 (2007).

## I. Factual/Procedural History

This action involves a portion of a 20–acre tract of land located on Fort Johnson Road, in James Island, South Carolina. The tract was formerly owned by Simeon B. Pinckney, who died intestate in 1921 and allegedly left a wife, Laura Pinckney, and two sons, Ellis and Herbert Pinckney, as his heirs.

The land held by Simeon B. Pinckney originated from a conveyance to him by deed executed in 1874 (and recorded in 1875) from Thomas Moore. The property was described as being 20 acres, more or less. In 1888, Simeon B. Pinckney conveyed 5 acres of this property to his wife, Isabella Pinckney, leaving approximately 15 acres. A survey conducted in 1923, however, found that exactly 14.3 acres remained.

In 1946, Laura Pinckney, Ellis Pinckney, and Herbert Pinckney executed two cross-deeds that divided the 14.3–acre parcel among themselves, creating a 4.3–acre tract and a 10–acre tract.[3] One of the 1946 cross-deeds conveyed the 4.3–acre tract to Herbert Pinckney and the other deed conveyed the 10–acre tract to Ellis Pinckney. In 1966, after Herbert Pinckney died intestate, Laura Pinckney Heyward brought a successful action to quiet title to the 4.3–acre tract held by Herbert.[4] None of the Petitioners or their predecessors-in-interest filed responsive pleadings in the 1966 proceeding.

---

3.  Petitioners gave a detailed account of their family's lineage dating back to the death of Simeon B. Pinckney. Essentially, Petitioners alleged they were the true heirs and subsequent-interest holders of Simeon B. Pinckney, descended through his true heirs, Samuel James Pinckney and Mary Pinckney. Petitioners claimed Laura Pinckney (who later assumed the married name of Heyward) was Samuel James Pinckney's sister-in-law. Based on this allegation, Petitioners asserted Laura Pinckney Heyward obtained the 1946 deeds by falsely claiming to be the wife of Simeon B. Pinckney (instead of Isabella Pinckney, Simeon B. Pinckney's "true spouse") and claiming that Simeon B. Pinckney's sole heirs were herself and her sons Herbert and Ellis Pinckney. According to Petitioners, Samuel James Pinckney was alive in 1946 and may have been living on a portion of the original 20–acre tract with his wife and children. However, Petitioners claimed that neither Samuel James Pinckney nor any of the other legitimate heirs could read or write and, thus, did not have notice of the 1946 deeds.

4.  By way of publication, Laura Pinckney Heyward served the 1966 quiet title action to "unknown persons." *See* S.C.Code Ann. § 10–2404

As the result of subsequent conveyances, the 4.3–acre tract was ultimately divided into four lots. The owners of these lots are as follows: (1) The Converse Company (Lot #1); (2) Martine A. Hutton (Lot #2); (3) David Savage and Lisa M. Shogry–Savage (Lot #3); and (4) Debbie (Shogry) Dinovo (Lot #4). The instant case involves the interests of Dinovo ("Respondent").

On February 1, 2005, Petitioners filed an action to quiet title to several tracts of land located on James Island, including the 4.3–acre tract at issue in the instant case. In their Complaint, Petitioners sought "to establish their legitimate relationship as lineal descendants and heirs" of Simeon B. Pinckney. The first twenty-five named Petitioners claimed they were heirs of Simeon B. Pinckney, and the remaining Petitioners claimed they purchased interests in the property and were the legitimate owners of those interests.

In support of these claims, Petitioners alleged the 1946 deeds and 1966 action to quiet title were fraudulent and were undertaken without consideration for the rights or interests of Petitioners and other heirs. Specifically, Petitioners asserted the 4.3–acre tract was fraudulently conveyed to Herbert Pinckney in 1946 and, thereafter, wrongly passed by inheritance to his mother Laura Pinckney Heyward at Herbert's death. Additionally, Petitioners claimed Laura Pinckney Heyward fraudulently procured the 1966 quiet title action to the 4.3–acre tract when neither she nor Herbert Pinckney owned any interest in the tract. Finally, Petitioners alleged they did not become aware of the 1946 deeds, of the 1966 quiet title action, or of any other action affecting their title to the property until 2004.

Based on these allegations, Petitioners sought "(a) a determination of all owners of the four (4) tracts of property, . . . a determination of each owner's respective rights and interests

_____

(1962) (precursor to S.C.Code Ann. § 15–67–40 (2005), which provides for service by publication for "unknown persons defendant" in an action to determine adverse claims to real property within this state); S.C.Code Ann. § 15–67–40 (2005) ("Service of the summons may be had upon all such unknown persons defendant by publication in the same manner as against nonresident defendants, upon the filing of an affidavit of the plaintiff, his agent or attorney, stating the existence of a cause of action to try adverse claims within this State.").

in said tracts, and the quieting of the titles to these four (4) tracts and (b) the sale of the respective owners' interests in these four (4) tracts."

Respondent answered and filed a motion for summary judgment. In her answer, Respondent raised a number of affirmative defenses, including the doctrines of laches, estoppel, waiver, bona fide purchaser for value, *res judicata,* collateral estoppel, and the applicable statute of limitations.

In response to the motion for summary judgment, Petitioners argued their claim was not barred by section 15–67–90 given the 1966 quiet title action was the result of extrinsic fraud. Because they offered affidavits supporting their claim that the 1966 quiet title action was procured through fraud and forgery, Petitioners contended their action was distinguishable from the case of *Yarbrough v. Collins,* 301 S.C. 339, 391 S.E.2d 873 (Ct.App.1990).[5]

After a hearing, the circuit court granted summary judgment in favor of Respondent. In doing so, the court found Petitioners' claims were barred by: (1) the three-year statute of limitations, codified in section 15–67–90, which prohibits setting aside "for any reason" a judgment quieting title to land; (2) Respondent is a bona fide purchaser for value without notice pursuant to section 30–7–10, the recording statute; and (3) the doctrine of laches. Because Petitioners were not parties to the 1966 quiet title action, the circuit court judge found the doctrines of collateral estoppel and *res judicata* were not applicable.

Petitioners appealed the circuit court's order to the Court of Appeals.

In a summary opinion, the Court of Appeals affirmed the decision of the circuit court. See *Robinson v. Estate of*

---

5. In *Yarbrough,* the property claimant filed an action to vacate a seven-year-old judgment quieting title to approximately ten acres of land. Yarbrough claimed the judgment was procured through extrinsic fraud. *Id.* at 341, 391 S.E.2d at 874. The trial court granted summary judgment to the defendants on the ground the action was time-barred by section 15–67–90. *Id.* at 341, 391 S.E.2d at 875. On appeal, the Court of Appeals affirmed the trial court's decision. In so ruling, the court found that "[n]othing in this record demonstrates Yarbrough's knowledge regarding her claim of extrinsic fraud was any different in 1981 than it was in 1988." *Id.* at 342, 391 S.E.2d at 875.

*Harris,* Op. No. 2008–UP–647 (S.C. Ct.App. filed Nov. 24, 2008). In support of its decision, the court cited: (1) the three-year statute of limitations as codified in section 15–67–90; (2) *Yarbrough* as interpreting section 15–67–90; (3) *Robinson v. Estate of Harris,* 378 S.C. 140, 662 S.E.2d 420 (Ct.App.2008), *cert. granted* (Apr. 10, 2009); and (4) *Burnett v. Holliday Brothers, Inc.,* 279 S.C. 222, 225, 305 S.E.2d 238, 240 (1983), to reference the purpose of the recording statute as codified in section 30–7–10.

This Court granted Petitioners' request for a writ of certiorari to review the decision of the Court of Appeals.

## II. Discussion

### A.

On appeal from the grant of a summary judgment motion, this Court applies the same standard as that required for the circuit court under Rule 56(c), SCRCP; *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000).

Rule 56(c) of the South Carolina Rules of Civil Procedure provides that a trial court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP.

"In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Pye v. Estate of Fox,* 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006).

### B.

In essence, Petitioners contend summary judgment was improperly granted given that significant and material questions of fact exist relating to extrinsic fraud and forgery in the underlying 1966 quiet title action and the 1946 cross-deeds upon which the action was based.

In support of this contention, Petitioners argue the circuit court and the Court of Appeals erred in determining that

section 15–67–90 constitutes an "absolute bar" to setting aside judgments quieting title to land. Because they submitted affidavits in support of their claims of extrinsic fraud and forgery, Petitioners assert their cause of action is distinguishable from *Yarbrough* and should not have been procedurally barred by the applicable statute of limitations.

## C.

In analyzing Petitioners' arguments, we must determine whether section 15–67–90 constitutes an "absolute bar" to Petitioners' action or whether Petitioners' claim of extrinsic fraud supersedes the application of this statute of limitations.

This determination requires us to revisit our decision in *Hagy v. Pruitt,* 339 S.C. 425, 529 S.E.2d 714 (2000). In *Hagy,* the biological parents brought an action in 1994 to set aside the 1992 adoption of their daughter on the ground that their consent to the adoption was induced by fraudulent statements made by the adoptive parents, who were also the biological mother's father and stepmother. *Id.* at 428–29, 529 S.E.2d at 716. In response, the adoptive parents defended on the merits and asserted the action was time-barred by section 20–7–1800 of the South Carolina Code, which at the time provided: "No final decree of adoption is subject to collateral attack for any reason after a period of one year following its issuance." *Id.* at 429, 529 S.E.2d at 716. The family court concluded the time bar did not apply to actions to set aside an adoption for fraud. The Court of Appeals reversed the family court's decision, finding section 20–7–1800 barred the action because it was commenced more than one year after the final adoption decree was commenced. *Id.*

On appeal, this Court affirmed as modified the decision of the Court of Appeals. In so ruling, this Court considered the novel question of "whether a facially applicable statute of limitation will bar an action to set aside a judgment procured by extrinsic fraud." *Id.* at 430, 529 S.E.2d at 717.[6] The Court determined that a statute of limitations purporting to bar all actions to set aside a judgment would not limit "a court's

---

**6.** The Court referenced *Yarbrough* but noted that there was no comparable challenge to the statute of limitations in that case. *Hagy,* 339 S.C. at 430 n. 5, 529 S.E.2d at 717 n. 5.

inherent authority to set aside a judgment for extrinsic fraud." *Id.* at 431, 529 S.E.2d at 717. However, because Hagy failed to prove her consent was obtained by fraud, the Court affirmed the decision of the Court of Appeals. *Id.* at 433–34, 529 S.E.2d at 719.

We find *Hagy* supports Petitioners' contention that this Court, the Court of Appeals, and the circuit court have the inherent authority to set aside the 1966 quiet title action and the underlying 1946 cross-deeds if in fact they were procured as the result of extrinsic fraud. Moreover, a broad reading of *Yarbrough* indicates that a court could consider the ground of extrinsic fraud, if sufficiently proven, as affecting the application of section 15–67–90. *See Yarbrough,* 301 S.C. at 341–42, 391 S.E.2d at 875 (concluding property claimant's action to quiet title brought seven years after title clearance action was barred by section 15–67–90 but implicitly recognizing that extrinsic fraud, if proven, could operate to preclude application of the three-year statute of limitations).[7]

In view of our conclusion, the question becomes whether Petitioners' submission of the affidavits is sufficient to withstand Respondent's motion for summary judgment based on Petitioners' claim of extrinsic fraud.

"A judgment may be set aside on the ground of fraud only if the fraud is 'extrinsic' and not 'intrinsic.'" *Hagy,* 339 S.C. at 431, 529 S.E.2d at 717. Extrinsic fraud is "'fraud that induces a person not to present a case or deprives a person of the opportunity to be heard.'" *Id.* at 431, 529 S.E.2d at 717–18 (quoting *Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Comm'n,* 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987)). "[R]elief is granted for extrinsic fraud on the theory that by reason of the fraud preventing a party from fully exhibiting and trying his case, there never has been a real contest before the court of the subject matter of the action." *Chewning v. Ford Motor Co.,* 354 S.C. 72, 82, 579 S.E.2d 605, 610 (2003). If a judgment procured by extrinsic fraud could have been

---

**7.** Based on our finding that section 15–67–90 is not an "absolute bar," we need not address Petitioners' issue as to whether this statute violates the due process clauses of our state and federal constitutions. *See* U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3 (stating no person shall be deprived of life, liberty, or property without due process of law).

avoided if the challenging party exercised due diligence, a court generally will not grant relief from the judgment. *Center v. Center*, 269 S.C. 367, 373, 237 S.E.2d 491, 494 (1977).

■ Intrinsic fraud is fraud which was presented and considered at trial. *Chewning*, 354 S.C. at 81, 579 S.E.2d at 610. "It is fraud which misleads a court in determining issues and induces the court to find for the party perpetrating the fraud." *Id.*

Considering the facts of the instant case in the procedural posture of a motion for summary judgment, Petitioners offered evidence that arguably created a material question of fact regarding whether the 1946 cross-deeds and 1966 quiet title action were procured by extrinsic fraud.

Although Petitioners' affidavits are very detailed, they essentially outlined Petitioners' ancestry as direct descendants of Simeon B. Pinckney and his son Samuel James Pinckney. The affidavits indicate Laura Pinckney was not married to Simeon B. Pinckney and that Herbert and Ellis Pinckney were of no relation to Simeon B. Pinckney. The affidavits also provide that several of Petitioners' relatives had lived on the subject property prior to the institution of the 2005 quiet title action. Additionally, the affidavits state Petitioners were unaware of the 1966 quiet title action and did not realize until late 2003 that portions of the 4.3–acre tract were under construction because the property was heavily wooded and the construction was "off the road."

## D.

However, even assuming Petitioners offered sufficient evidence of extrinsic fraud to withstand Respondent's motion for summary judgment, this alone is not dispositive of Petitioners' appeal. Instead, this case presents a unique set of circumstances that operate to preclude Petitioners' action.

■ As evidenced by our decision in *Hagy*, this Court recognized that the doctrine of laches would be applicable in determining whether an action is time-barred even if extrinsic

fraud is established. *Hagy*, 339 S.C. at 431 n. 7, 529 S.E.2d at 717 n. 7 (discussing the one-year statute of limitations for a collateral attack on an adoption decree and stating "[a]lthough not an issue in this case, the doctrine of laches will apply in determining whether such an action is barred"). We believe the instant case presents such a scenario.[8]

■■■■■ "Courts have the inherent power to do all things reasonably necessary to ensure that just results are reached to the fullest extent possible." *Jones v. Leagan*, 384 S.C. 1, 19, 681 S.E.2d 6, 16 (Ct.App.2009). The equitable doctrine of laches is defined as "neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." *Hallums v. Hallums*, 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988). "Under the doctrine of laches, if a party, knowing his rights, does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights." *Chambers of S.C., Inc. v. County Council for Lee County*, 315 S.C. 418, 421, 434 S.E.2d 279, 280 (1993). The party seeking to establish laches must show: (1) a delay, (2) that was unreasonable under the circumstances, and (3) prejudice. *Hallums*, 296 S.C. at 199, 371 S.E.2d at 528.

---

**8.** The Court of Appeals affirmed the circuit court's order based on section 15–67–90 and Respondent's status as a bona fide purchaser for value without notice. Petitioners, however, failed to raise any arguments in their petition for rehearing or initial brief to this Court regarding the circuit court's ruling as to the doctrine of laches. Accordingly, we find the doctrine of laches is the law of the case and this Court is justified in affirming on that basis. *See Biales v. Young*, 315 S.C. 166, 168, 432 S.E.2d 482, 484 (1993) (recognizing that where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case); see also Rule 242(d)(2), SCACR ("Only those questions raised in the Court of Appeals and in the petition for rehearing shall be included in the petition for writ of certiorari as a question presented to the Supreme Court."). However, because this case presents us with an opportunity to address the applicability of the doctrine of laches to section 15–67–90, we have chosen to analyze the merits of this doctrine rather than merely rely on procedural rules to reach our ultimate disposition.

Applying the foregoing to the facts of the instant case, we find Respondent established the requisite factors to bar Petitioners' action based on the doctrine of laches.

Here, Petitioners waited thirty-nine years to challenge the 1966 quiet title action. Although Petitioners claim they did not have notice of the 1966 quiet title action until 2004, their own affidavits appear to discount this claim. In the affidavits, Petitioners assert that one of their heirs paid the county property taxes on the Fort Johnson Road properties until at least 1988. If this was in fact the case, Petitioners would have received county tax documents that corresponded to the respective properties. After the property was sold, the subsequent purchasers would have then received these tax documents. In turn, Petitioners' failure to receive tax documents should have served as notice regarding a problem with their title to the property. Thus, given that the deeds and the quiet title action were publicly-recorded and documented, it was an unreasonable length of time for Petitioners to delay in instituting the 2005 quiet title action.

Additionally, Respondent would be undoubtedly prejudiced if Petitioners' claim is not barred by laches given she purchased her lot for significant consideration and has been in possession of it since 1997 and built a family residence in 2002.

In reaching our decision, we have thoroughly considered and are empathetic to Petitioners' plight. However, given the specific facts of the instant case, we are compelled to hold the doctrine of laches precludes Petitioners from pursuing their claim. Here, Petitioners waited thirty-nine years to assert their rights regarding the 1966 quiet title action. We find such a flagrant and egregious delay represents the quintessential situation that the doctrine of laches was intended to protect. For this Court to hold otherwise, we would have to affirmatively reject this well-established equitable doctrine.

Our decision should not be construed as establishing a general rule. Instead, we believe under the proper facts a claim of extrinsic fraud could be utilized to successfully circumvent the three-year statute of limitations as established by section 15–67–90.[9]

---

9. To conclude otherwise, we believe, would require property owners to check the title to their property every three years.

## E.

Finally, Petitioners contend the Court of Appeals erred in relying on *Robinson v. Estate of Harris (Duggan)*, 378 S.C. 140, 662 S.E.2d 420 (Ct.App.2008), *cert. granted* (Apr. 10, 2009), a case involving a .5–acre tract that was part of Simeon B. Pinckney's original parcel. Specifically, Petitioners assert the Court of Appeals erred in applying section 15–39–870,[10] as the .5–acre tract at issue in the above-cited Duggan case was obtained by defendant Daniel Duggan via a different chain of title than Respondents' property. Thus, Petitioners contend the Duggan case involved a tract of land that was not the subject of the 1966 quiet title action, but rather was foreclosed upon and sold to Duggan at a judicial sale pursuant to section 15–39–870. Because the 4.3–acre tract at issue in the instant case was not sold at a judicial sale, Petitioners assert the Court of Appeals erred in applying section 15–39–870 to Respondents' case.

We hold Petitioners' argument to be without merit as the Court of Appeals cited *Robinson*, the Duggan case, merely to establish the general prerequisites to institute the protection of Respondent as bona fide purchaser for value. Because the requirements of a bona fide purchaser are the same in relation to section 30–7–10 or section 15–39–870, it is inconsequential that the Court of Appeals cited *Robinson* which applied section 15–39–870. *See Spence v. Spence*, 368 S.C. 106, 117, 628 S.E.2d 869, 874–75 (2006) (outlining well-established requirements to invoke protection as a bona fide purchaser for value and discussing limitations of the status of a bona fide purchaser in situations involving deeds that are void *ab initio*). Moreover, a determination as to the propriety of the *Robinson* citation is unnecessary given our decision to affirm the grant of summary judgment to Respondent based on the doctrine of laches.

---

10. Section 15–39–870 provides:

Upon execution and delivery by the proper officer of the court of a deed for any property sold at a judicial sale under a decree of a court of competent jurisdiction the proceedings under which such sale is made shall be deemed res judicata as to any and all bona fide purchasers for value without notice, notwithstanding such sale may not subsequently be confirmed by the court.

S.C.Code Ann. § 15–39–870 (2005).

### III. Conclusion

Based on the foregoing, we find the circuit court properly granted Respondent's motion for summary judgment. Even assuming Petitioners sufficiently established their extrinsic fraud claim to avoid the three-year statute of limitations provided for in section 15–67–90, we hold the doctrine of laches operates to bar their claim. Accordingly, we affirm the decision of the Court of Appeals.

**AFFIRMED.**

TOAL, C.J., KITTREDGE, J., Acting Justices JAMES E. MOORE and E.C. BURNETT, III, concur.