# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Brenda Halsey, Bernay F. Halsey, Jr., Demont Halsey, Fredericka Halsey, and Brittany Halsey, Appellants,

v.

Gwendolette Halsey Simmons, Kenneth Wayne Oglesby, Roderick Terrill Oglesby, any heirs of the Rederick Gaffney Estate, known and unknown, who may claim any interest in the subject property, and any unknown heirs or parties who may claim title or ownership in the real estate which is the subject of this action, Elijah Redish, Jackie W. Williams, as Cherokee County Treasurer, or the Successor in Office, Vernon L. Price, as Delinquent Tax Collector of Cherokee County, or the Successor in Office, Defendants,

Of whom Gwendolette Halsey Simmons, Elijah Redish, Jackie W. Williams, as Cherokee County Treasurer, or the Successor in Office, Vernon L. Price, as Delinquent Tax Collector of Cherokee County, or the Successor in Office, are the Respondents.

Appellate Case No. 2017-001459

Appeal From Cherokee County
Gordon G. Cooper, Master-In-Equity

Opinion No. 5712
Submitted December 2, 2019 – Filed January 22, 2019.

**AFFIRMED**

Richard H. Rhodes and William Hardwick Rhodes, both of Burts Turner & Rhodes, of Spartanburg, for Appellants.

George Brandt, III, of Henderson Brandt & Vieth, PA, of Spartanburg, for Respondent Elijah Redish; Joseph L. Mathis and Joseph L.V. Johnson, both of Saint-Amand Thompson & Mathis, LLC, of Gaffney, for Respondents Vernon L. Price, as Delinquent Tax Collector of Cherokee County, or the Successor in Office, and Jackie W. Williams, as Cherokee County Treasurer, or the Successor in Office; and Anna-Karina Parker, of Winter & Rhoden, LLC, of Gaffney, for Respondent Gwendolette Halsey Simmons.

---

**GEATHERS, J.:**  In this action to declare a delinquent property tax sale invalid, Appellants Brenda Halsey ("Mrs. Halsey") and her children contend that the Master-In-Equity erred in finding county officials, by way of Respondents Vernon L. Price, the Delinquent Tax Collector, and Jackie W. Williams, the County Treasurer, strictly complied with the notice requirements of S.C. Code Ann. § 12-51-40 (2014). Specifically, Appellants contend that the Master erred by (1) finding the tax sale valid because (i) the notices were not sent to the best address available, and (ii) the notices were not sent to Mrs. Halsey; and (2) granting a directed verdict for Respondents because (i) Appellants were denied the opportunity to present evidence, (ii) the testimony showed that the requirements of section 12-51-40 were not followed, (iii) the ruling was based on an incomplete record, and (iv) Price had actual notice that Mrs. Halsey was the owner of the property at issue.  We affirm.[1]

## FACTS

The property in question is the parcel, with an unoccupied house, located at 305 Leadmine Street, Gaffney, map reference number 100-08-00-055.003 ("the Property").  The Property was originally a part of the surrounding mobile home park's parcel ("Oglesby Mobile Homes") but splintered from that parcel at some point in time.  Additionally, there is a relevant parcel adjacent to the Property, with map reference number 100-08-00-056.000 ("Adjacent Property"), where Respondent Gwendolette Simmons ("Gwendolette") had a home.  Appellants claim their interest in the Property through Mrs. Halsey's husband, Bernay Halsey (Gwendolette's brother), who died intestate on June 22, 2004.  Bernay Halsey's estate was filed in probate court in 2014, ten years after his death.  Appellants contend Bernay Halsey obtained title to the Property by deed referenced 14-Q 171.  However,

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

due to incorrect legal descriptions of the properties in the aforementioned deed, issues surrounding the discovery of any other deed to the Property, and mapping problems, the chain of title to the Property is complicated.[2]  This confusion led to misidentification in taxing the Property, with the taxes being listed with either the wrong address, a different owner, or the wrong tax map number.  There is no document in the record listing Bernay Halsey as the owner of the Property with its correct tax map number, 100-08-00-055.003.

The Property was sold at a delinquent tax sale on November 4, 2013, due to unpaid taxes from years 2008–12.  It is undisputed that prior to the sale, and thereafter, Cherokee County officials sent all statutorily required notices to Gwendolette (also known as Gwendolyn Dawkins).  Appellants argue that Mrs. Halsey was entitled to notice because county officials knew that Mrs. Halsey was the owner of the Property.  Respondents counter that county officials did not know who owned the Property, so the notices were sent to the "Rederick Gaffney Estate" in care of Gwendolyn Dawkins (Gwendolette).

Delinquent Taxes & Notice of Tax Sale

The first set of tax receipts in the record that correctly list the Property's map reference number are from 2004 and 2005.  The receipts list the Property's owner as the Rederick Gaffney Estate, in care of Gwendolyn Dawkins, as follows:

> GAFFNEY REDERICK EST
> % GWENDOLYN DAWKINS
> 135 IRIS LANE
> GAFFNEY SC 29341

Mrs. Halsey paid both 2004 and 2005 taxes on the Property to the Treasurer's Office.  There are no tax receipts or assertions of taxes having been paid for the Property beyond these two years in the record.

Respondent Vernon Price began working as the Delinquent Tax Collector of Cherokee County in 2003.  He was the sole employee in his department during the notice period in question.  At trial, Price testified that the chains of title for the entire relevant tract of land (including Oglesby Mobile Homes and Adjacent Property) were uncertain.  He stated that his office regularly tries to work with the Treasurer's

---

[2] The Property was inarguably devised to the Rederick Gaffney Estate in 1917 as part of a larger tract of land.

Office, Tax Assessor's Office, and Mapping Office to sort out property ownership when it is unclear. The addresses Price's department uses to send notices of delinquent taxes and other correspondence are usually supplied by the Tax Assessor's Office. However, these addresses can change at any time because interested persons can call and advise the Assessor's Office that they have a new address, and that address would be used by the County for notification purposes. Price stated that he searches mobile home records, alerts the Treasurer's Office of misspellings of names that he is aware of, and asks the Assessor's Office questions to try and ensure delinquent notices are sent to the correct person.

Price testified that the County conducted multiple title and deed searches to find owners of the Property, but to no avail. Additionally, he testified that there was no documentation informing him who were the heirs to the Property. Price stated Mrs. Halsey had never represented herself to be the owner of the Property and she had never come in to speak with him regarding the Property; rather, she only spoke to him about Oglesby Mobile Homes. Price testified that when Mrs. Halsey would come to his office regarding Oglesby Mobile Homes, he would mention to her that the taxes on the Property were owed. In 2012, Mrs. Halsey went to Price's office and paid delinquent taxes on Oglesby Mobile Homes. Mrs. Halsey asserted in her original complaint that at the time she thought that she was also paying back taxes on the Property. However, Price stated Mrs. Halsey knew she was paying taxes for only Oglesby Mobile Homes.[3]

Price testified that the statutory notices to "delinquent taxpayers" or "grantees of record" pursuant to section 12-51-40(a) & (b) are auto-generated and mailed by a third-party service, QS-1, using the name and address of the taxpayer that the Tax Assessor's Office has listed in its system. Price stated he does not send any additional notices to any other party unless he has actual knowledge that that party

---

[3] Mrs. Halsey paid the taxes in question via check in the amount of $10,002.19. The receipts for this payment reflect taxes for Oglesby's MHP, with map reference number 100-08-00-055, for the years of 2008, 2009, 2010, and 2011. The cumulative total of the taxes owed for the aforementioned years equaled the amount paid—$10,002.19. The following was listed under the owner portion of all of the corresponding receipts:

OGLESBY MH PRK/ REDERICK
GAFFNEY EST/ % GWEN DAWKINS
135 IRIS LANE
GAFFNEY SC 29341

is an owner of the property. The first notice, the Execution Notice, was sent on or about March 24, 2013, to:

GAFFNEY REDERICK EST
% GWENDOLYN DAWKINS
135 IRIS LANE
GAFFNEY SC 29341

The notice advised that the taxes in the amount of $1,768.85 for the year 2012 had to be paid by April 30, 2013. The delinquent taxes were not paid, and a Final Tax Notice was sent by certified mail to Gwendolette on June 8, 2013. Gwendolette signed for the mail the same day. This Final Tax Notice gave the Rederick Gaffney Estate until July 31, 2013, to pay the delinquent taxes. Price then physically posted a Notice of Levy on the Property on September 18, 2013. The taxes were not paid, and the Property was advertised for sale at public auction in two separate newspapers: October 16 & 30, 2013, for one paper; and October 22 & 29, 2013, for the other.

The Property was sold at auction on November 4, 2013, to Elijah Redish for $12,000. This amount covered the existing delinquent tax amount of $9,627.53 owed on the Property for tax years 2008–12, plus the fees that were not applied at the time of the advertising. On November 13, 2013, Price mailed a notice to Gwendolette informing her of the sale to Redish and that the Rederick Gaffney Estate had until November 5, 2014, to redeem the Property. At some point in 2014, as previously mentioned, the estate of Bernay Halsey was filed in probate court. Finally, on October 14, 2014, Price sent delinquent tax notices via certified mail to Gwendolette at her previously designated address and to Mrs. Halsey at the Property's address of 305 Leadmine Street. Price testified that he sent Mrs. Halsey the delinquent tax notice informing her about the final date of redemption because he knew Mrs. Halsey was involved. The Property was not redeemed, and Elijah Redish was granted title to the Property on November 12, 2014.

Appellants filed their complaint in the Court of Common Pleas of the Seventh Judicial Circuit on April 15, 2015, seeking a ruling that the tax sale was conducted improperly due to the actions of Price and the Cherokee County Treasurer and a finding that Appellants were the owners of the Property over any potential heirs of Rederick Gaffney. Therefore, Gwendolette and her siblings, as well as any other potential heirs of the Rederick Gaffney Estate, were joined in the suit to protect any interest they may have in the Property. Elijah Redish, as recipient of the tax deed, was joined as well. All parties consented to having the case heard by a special

referee. The trial was held on March 22, 2017. At trial, Appellants' counsel consented to allowing Respondents to present their case first. After the testimony of Price, Respondents moved for a directed verdict. The Master granted this motion, having found that Price strictly complied with and exceeded his statutory notice requirements even though ownership interests in the Property were not apparent.

## ISSUES ON APPEAL

I. Did the Master err in finding that Price sent the notices to the best address available pursuant to section 12-51-40(a) of the South Carolina Code (2014)?

II. Did the Master err in finding that Price complied with the notice requirements under section 12-51-40 by sending the statutorily defined notices to Gwendolette Simmons and not Brenda Halsey?

III. Did the Master err in granting Respondents' motion for a directed verdict, which precluded Appellants from presenting additional evidence?

IV. Did the Master err in finding that Price met the requirements of section 12-51-40 and granting Respondents' motion for a directed verdict?

V. Did the Master err in granting Respondents' motion for a directed verdict based on an incomplete record?

VI. Did the Master err in finding Price did not have actual notice that Mrs. Halsey was an owner of the property in question?

## STANDARD OF REVIEW

"In actions at equity, tried before a judge alone, we are free to find the facts according to our own view of the preponderance of the evidence." *Forfeited Land Comm'n of Bamberg Cty. v. Beard*, 424 S.C. 137, 144, 817 S.E.2d 801, 804 (Ct. App. 2018). "However, this broad scope of review does not require an appellate court to disregard the findings below or ignore the fact that the [circuit court] is in the better position to assess the credibility of the witnesses." *Id.* (alteration in original) (quoting *Pinckney v. Warren*, 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001)). When reviewing a circuit court's grant or denial of a motion for directed verdict, the appellate court will reverse only when there is no evidence to support the ruling or

when the ruling is governed by an error of law. *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 42, 691 S.E.2d 135, 145 (2010).

## LAW/ANALYSIS

### I. TAX SALE NOTICE

Section 12-51-40 of the South Carolina Code (2014) states that the county officer authorized to collect delinquent taxes shall "mail a notice of delinquent property taxes, penalties, assessments, and costs to the *defaulting taxpayer* and to a *grantee of record* of the property . . . ." (emphases added). This "notice must be mailed to the *best address available*, which is either the address shown on the deed conveying the property to him, the property address, or other corrected or forwarding address of which the officer . . . has actual knowledge." § 12-51-40(a) (emphasis added). Appellants contend that the tax sale was invalid pursuant to section 12-51-40 because Mrs. Halsey was an owner of the Property and the delinquent tax office was aware of that fact. Therefore, Appellants assert that the tax notices were not sent to Mrs. Halsey as an owner or to the "best address available." Respondents contend that the delinquent tax office complied with its statutory obligations by sending notices for the "Rederick Gaffney Estate" to the "best address available"— in care of Gwendolette. Respondents further contend that because ownership of the Property was unclear, county tax officials were not required to mail notices to Mrs. Halsey. We agree with Respondents.

### a. Mrs. Halsey was not entitled to notice because she was not the Property's "defaulting taxpayer" or a "grantee of record."

"A tax execution is not issued against the property[;] it is issued against the defaulting tax payer." *Rives v. Bulsa*, 325 S.C. 287, 293, 478 S.E.2d 871, 881 (Ct. App. 1996) (citing *Aldridge v. Rutledge*, 269 S.C. 475, 478, 238 S.E.2d 165, 166 (1977)). "Due process of law requires some sort of notice to a landowner before he is deprived of his property." *Id.* Tax sales in South Carolina are governed by statute. S.C. Code Ann. §§ 12-51-40 to -170 (2014 & Supp. 2019). The delinquent tax officer must give notice to the "defaulting taxpayer" and/or the "grantee of record." § 12-51-40. "Tax sales must be conducted in strict compliance with statutory requirements." *King v. James*, 388 S.C. 16, 25, 694 S.E.2d 35, 39 (Ct. App. 2010) (quoting *In Re Ryan Inv. Co.*, 335 S.C. 392, 395, 517 S.E.2d 692, 693 (1999)). "[F]ailure to give the required notice of a tax sale is a fundamental defect in the tax sale proceedings that renders the proceedings absolutely void." *Hawkins v. Bruno Yacht Sales, Inc.*, 353 S.C. 31, 36, 577 S.E.2d 202, 205 (2003). "The sound view is

that all requirements of law leading up to the tax sales [that] are intended for the protection of the tax payer against surprise or the sacrifice of his property are to be regarded as mandatory and are to be strictly enforced." *Rives*, 325 S.C. at 292–93, 478 S.E.2d at 881. Even "the fact that the defaulting taxpayer has actual notice of the impending tax sale 'is *insufficient* to uphold a tax sale absent strict compliance with statutory requirements.'" *Hawkins*, 353 S.C. at 36, 577 S.E.2d at 205 (quoting *In Re Ryan Inv. Co.*, 335 S.C. at 395, 517 S.E.2d at 693).

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Id.* at 39, 577 S.E.2d at 207. "Where the statute's language is plain and unambiguous[] and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "On the other hand, where a statute is ambiguous, the [c]ourt must construe the terms of the statute." *Wade v. Berkeley Cty.*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002). The term "grantee of record" is unambiguous. *See* § 12-51-40(a). The plain meaning of "grantee" is "one to whom property is conveyed." *Grantee*, Black's Law Dictionary (11th ed. 2019). Section 12-60-30(29) of the South Carolina Code (2014) defines "taxpayer" as "a person who is liable for a tax or who is responsible for collecting and remitting a tax." Further, section 12-37-610 of the South Carolina Code (2014 & Supp. 2019) states that each person is liable to pay taxes on real property "he owns . . . as recorded in public records for deeds of the county in which the property is located, or on the real property that . . . he has care of as guardian, executor, trustee, or committee."

These taxing statutes and our state's legal history make clear that the term "defaulting taxpayer" comfortably includes true owners of property (who are liable for a tax) and their agents (who can be responsible for collecting and remitting the tax). *See Rives*, 325 S.C. at 293, 478 S.E.2d at 881 ("The taxing statutes and a legion of cases interpreting these statutes make it clear that property shall be listed, assessed, levied upon, advertised, and sold in the name of the *true owner*." (emphasis added)); *Johnson v. Arbabi*, 355 S.C. 64, 72, 584 S.E.2d 113, 117 (2003) (finding that implied agency can satisfy tax notice requirements). Prior to the year 2000, section 12-51-40 included references to the "current owner" instead of "defaulting taxpayer" and grantees of property. *See* S.C. Code Ann. § 12-51-40 (1998) (prior to the 2000 amendment); *see also* Act No. 399, § 3(X)(3), 2000 S.C. Acts 3471–73 (amending section 12-51-40, effective January 1, 2001). In amending the statute in 2000, and substituting "current owner" with "defaulting taxpayer" and "grantee" of record, the General Assembly sought to provide for notice to the grantee of record. *See* Act No. 399, § 3(X)(3), 2000 S.C. Acts 3439.

However, the 2000 amendment did not change the fact that county tax officials must be aware of the true owner's interest for the delinquent tax notification duty to apply. *See* § 12-51-40(f) ("For the purpose of enforcing payment and collection of property taxes when the true owner is *unknown* because of the death of the owner of record . . . the property must be advertised and sold in the name of the deceased owner of record." (emphasis added)). Appellants have cited no cases post-dating the enactment of section 12-51-40, and we have found none, holding that a person claiming ownership of certain property is entitled to notice without there also being either an adequate public record of the claimant's ownership or actual direct knowledge of their ownership by county officials. *Compare Taylor v. Mill*, 310 S.C. 526, 528, 426 S.E.2d 311, 312–13 (1992) (finding that county tax officials were not obligated to notify an individual with interest in a property because the individual bought the property subject to another lien and he failed to either notify the county that he was the grantee of the delinquent taxpayer of record or to record his deed), *Snelgrove v. Lanham*, 298 S.C. 302, 304, 379 S.E.2d 904, 905 (1989) (affirming the Master's order setting aside a tax deed obtained through a tax sale where the defaulting taxpayer notified the county of her new name and address following her marriage, but the county still failed to mail her the statutorily required notifications using her new contact information), *and Rives*, 325 S.C. at 294, 478 S.E.2d at 881 (affirming the Master's order invalidating the tax sale because the public records reflected the names of the correct owners), *with Bell v. Knight*, 376 S.C. 380, 382–83, 656 S.E.2d 393, 395 (Ct. App. 2008) (finding children of the record owner were not entitled to notice because even though the property's deed to a third party was not issued and recorded by the time of the tax sale, there was a probate order divesting the children of their interest in the property).

Here, Mrs. Halsey was not entitled to notice because there was no record of her as a true owner or evidence that Price had *actual knowledge* that she claimed ownership of the Property. Additionally, she was not a "grantee of record." *See* § 12-51-40. Price testified that county officials conducted many title and deed searches, but were unable to discover who the owners of the Property were. Appellants contend that their interest in the Property comes from Bernay Halsey via intestate succession. However, in the ten years since Appellants presumably inherited their ownership interest, they took no steps to record or document their interest. Appellants failed to probate the estate before the commencement of tax sale proceedings, or to request a letter of ownership from the Tax Assessor's Office. Had Appellants taken either of these steps, the record may have been adequate to assert true ownership interest. *See Rives*, 325 S.C. at 289–94, 478 S.E.2d at 879–81 (finding the probate record of decedent adequate to notify county of true owners);

*Bell*, 376 S.C. at 382–83, 656 S.E.2d at 395 (probate record was adequate to place county on notice that children were divested of their interest in the property and were not entitled to notice).  Instead, Appellants chose to act after tax sale proceedings had already begun.[4]

Further, although county tax officials must exercise diligence to ascertain the correct address of the property owner,[5] our courts have consistently found that it is "unreasonable to require tax officers to unravel complicated inheritances." *See, e.g.*, *Koth v. Pallachucola Club*, 79 S.C. 514, 517–18, 61 S.E. 77, 78 (1908).  To the extent that they are aware, property owners must provide county officials with actual notice of any problem with the county's assessment of their property and exercise their own diligence in remedying the issue.  *See Taylor*, 310 S.C. at 528, 426 S.E.2d at 312–13; *see also Robinson v. Estate of Harris*, 389 S.C. 360, 372, 698 S.E.2d 801, 807–08 (2010) (finding it unreasonable that claimants attempting to quiet title to a property would wait more than ten years to implement the suit because they had constructive knowledge that there was an issue with their title due to presumably not receiving tax documents for many years).

Additionally, Mrs. Halsey never represented herself as owner of the Property.  Although she did not have an opportunity to testify to this effect, nowhere in the record does Mrs. Halsey claim she, or any of the other Appellants, spoke with a county official to correct the title of the Property.  The record reflects a ten-year acquiescence to the Property being listed as owned by "Rederick Gaffney Estate." *See Robinson*, 389 S.C. at 372, 698 S.E.2d at 807–08 (crediting against claimants the fact that claimants had constructive knowledge of a defect in their property title but they did not act in a timely manner).  In the ten years following Bernay Halsey's death, no individual claimed ownership of the Property.  Thus, we find credible Price's testimony that he had no actual knowledge that Mrs. Halsey was the true owner of the Property.  Even though Price knew Mrs. Halsey was involved in the property, it would be unreasonable to expect county officials to send a notice to every family member who is "involved" in familial property or employ onerous

---

[4] The first (Execution) notice was mailed to Gwendolette in 2013, and Bernay Halsey's probate estate was filed in 2014.

[5] *Reeping v. JEBBCO, LLC*, 402 S.C. 195, 199–200, 740 S.E.2d 504, 506 (Ct. App. 2013) ( "[W]here a statute requires notice to the owner as a condition precedent to foreclosure of a tax lien, the person authorized to send the notice must exercise diligence to ascertain the correct address of the property owner." (alteration in original) (internal quotation marks omitted) (quoting *Benton v. Logan*, 323 S.C. 338, 341, 474 S.E.2d 446, 447 (Ct. App. 1996))).

methods to try and discover true owners. *See Koth*, 79 S.C. at 517–18, 61 S.E. at 78. Because a family member remits a tax payment for a property once or twice does not mean county officials should *assume* that that family member is liable for taxes as a true owner of the property. *See* §§ 12-51-40 and -60-30(29).

We conclude that county officials exercised due diligence in attempting to ascertain the true owners of the Property, and Appellants, having notice of the fact that the county did not know who the true owners were, did not attempt to correct the record. Therefore, Mrs. Halsey was not entitled to notice pursuant to section 12-51-40.

### b. Gwendolette's address was the "best address available."

Mrs. Halsey's address was not the "best available address" for the Rederick Gaffney Estate. The record shows that the only instances in which taxes were paid on the Property were when tax notices were sent to Gwendolette. Moreover, the record reflects that the notices for Oglesby Mobile Homes were consistently sent to Gwendolette's address as well. Given the interconnectivity of the properties, it was reasonable for Price to select Gwendolette's address as the best available address to send the delinquent notices. *See Snelgrove*, 298 S.C. at 304, 379 S.E.2d at 905 (finding county officials should have taken notice of the taxpayer's deed to a lot adjacent to the property at issue because the deed included the taxpayer's updated name and address). Additionally, the record shows that Gwendolette did in fact receive all the statutory notices sent to her by Price. Thus, Gwendolette's address was the best available address to notify all with interest in the Property of the impending tax sale so that no interested party could claim surprise regarding the tax sale.[6] *See Rives*, 325 S.C. at 292–93, 478 S.E.2d at 881 ("The sound view is that all

---

[6] Appellants alleged in their complaint to have not known about the tax sale until Redish recorded the tax deed on November 17, 2014. However, on September 17, 2013, the tax office physically posted notice of the impending tax sale on the Property. Considering Appellants' assertion that the best available address for Mrs. Halsey is the Property's address, it is implausible that Appellants were unaware of the posted notice—and if this is indeed the case, the Property's address could not have been the "best address available." Additionally, Appellants claimed to have been under the belief that Mrs. Halsey was paying taxes for the Property in 2012 when she wrote the check for $10,002.19. However, the receipts corroborated by Mr. Price's testimony make it clear that Mrs. Halsey was paying for Oglesby Mobile Homes. Even assuming Mrs. Halsey and her stepson (who accompanied her to Price's office) genuinely thought they were paying taxes for both properties, the

requirements of law leading up to the tax sales [that] are intended for the protection of the tax payer against surprise or the sacrifice of his property are to be regarded as mandatory . . . .").  The fact that Price posted the notice on the Property and later sent Mrs. Halsey a letter of redemption is not indicative of actual knowledge that Mrs. Halsey was the true owner or a belief that her address was the best available address for the Rederick Gaffney Estate.  *See Bell*, 376 S.C. at 384, 656 S.E.2d at 395 ("[W]e will not find notice inadequate because a tax collector *exceeded* the statutory notice requirements.").  Instead, it is indicative of the fact that Price tried to ensure that the Property remained with the family, evidenced by Price testifying to giving them multiple years (2008–13) to get the taxes paid.

Accordingly, we believe the Master did not err in finding that Price strictly complied with the requirements of section 12-51-40.[7]

## II.      Directed Verdict

Appellants contend that the Master erred in granting a directed verdict and request that the action be remanded to allow them the opportunity to prove ownership of the property to prevent any further confusion regarding ownership.

"When considering a directed verdict . . . the [appellate court] is required to view the evidence and the inferences that can be drawn from that evidence in the light most favorable to the nonmoving party."  *Hinkle v. Nat'l Cas. Ins. Co.*, 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003).  The appellate court will "reverse only when

---

receipts *also* listed Gwendolette as the caretaker of the property or properties.  *See supra* note 3.  This is further evidence of Appellants' acquiescence to Gwendolette's address being the "best address available."

[7] In their brief, Appellants argue Price failed to comply with the advertising requirements for the Property pursuant to section 12-51-40(d).  However, no such argument was raised prior to this appeal.  Insofar as Appellants are arguing county officials failed to strictly comply with section 12-51-40 due to the newspaper ads, that argument has not been preserved for appellate review.  *See Mims v. Alston,* 312 S.C. 311, 314 n.1, 440 S.E.2d 357, 359 n.1 (1994) (holding an issue neither raised nor ruled upon below will not be considered on appeal); *Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (finding where a circuit court does not explicitly rule on an argument raised and appellant makes no Rule 59 motion to obtain a ruling, the appellate court may not address the issue); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting conclusory arguments without supporting authority are considered abandoned).

there is no evidence to support the ruling or when the ruling is governed by an error of law." *Austin*, 387 S.C. at 42, 691 S.E.2d at 145 (2010). "If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and the motion should have been denied." *Pye v. Estate of Fox,* 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006). "Essentially, [the appellate court] must resolve whether it would be reasonably conceivable to have a verdict for a party opposing the motion under the facts as liberally construed in the opposing party's favor." *Id.* at 564, 633 S.E.2d at 509.

Because the Master did not err in finding that Price strictly complied with the requirements of section 12-51-40, the Master did not err in granting Respondents' motion for a directed verdict. At trial, Appellants introduced most of their exhibits and attached the remaining exhibits to their Rule 59(e) motion. None of the evidence presented purports to show that Mrs. Halsey was the true owner or that county officials should have been able to ascertain any purported interest Appellants now allege through this evidence. In their brief, Appellants concede that ownership surrounding the property was confusing. However, Appellants did nothing in the ten years they claimed to have had ownership of the Property to quell this confusion—even though Appellants had actual notice that county officials did not know they owned the Property. The documents Appellants claim show Bernay Halsey as the owner of the Property do not have the Property's correct tax map number, and there are no documents purporting to show any of the Appellants as the owner of the Property. Nowhere in the record do any of the Appellants claim to have asserted to county officials that Mrs. Halsey was the owner of the Property before the commencement of the delinquent tax sale proceedings. Thus, there is no reasonable inference that county officials knew or should have known Mrs. Halsey was the true owner. *See id.* at 563, 633 S.E.2d at 509. Accordingly, there is no reasonable inference that Mrs. Halsey was entitled to notice under section 12-51-40 or that the Property's address was the best address available. *See id.* at 564, 633 S.E.2d at 509.

## CONCLUSION

Based on the foregoing, the Master's order is

**AFFIRMED.**

**SHORT and THOMAS, JJ., concur.**