666 S.E.2d 915

Steven K. FOX, Appellant,

v.

George C. MOULTRIE d/b/a George Moultrie & Associates, Charleston County Business License & User Fee Dept., Commerce Clearing House, Inc., United States Government acting by and through The Internal Revenue Service, State of South Carolina Dept. of Revenue, Charleston County, Charleston County Treasurer, Charleston County Tax Collector, John Doe and Mary Doe, also all other persons Unknown claiming any right, title, estate, interest in or lien upon the real estate described in the Complaint herein, Defendants,

of whom State of South Carolina Department of Revenue and Charleston County Business License User Fee Dept., Charleston County, Charleston County Treasurer, Charleston County Tax Collector are Appellants,

and

George C. Moultrie d/b/a George Moultrie & Associates, Commerce Clearing House, Inc., United States Government acting by and through The Internal Revenue Service, John Doe and Mary Doe, also all other persons unknown claiming any right, title, estate, interest in or lien upon the real estate described in the Complaint herein are Respondents.

No. 26546.

Supreme Court of South Carolina.

Heard May 8, 2008.

Decided Sept. 15, 2008.

610

Patricia M. Ferguson, of Myrtle Beach, for Appellant Fox.

Joe S. Dusenbury, Jr., of Columbia, for Appellant South Carolina Department of Revenue.

Joseph Dawson, III; Bernard E. Ferrara, Jr.; and Bernice M. Jenkins, all of North Charleston, for Appellants.

Kevin F. McDonald, of Columbia; Lee Ellis Berlinsky, of Charleston; and Randolph L. Hutter, of Washington, for Respondent Internal Revenue Service.

Justice BEATTY:

Steven K. Fox, various Charleston County offices, and the Department of Revenue appeal the master-in-equity's finding that a person buying a property in a county delinquent property tax sale purchased the property subject to outstanding Internal Revenue Service (IRS) liens. We affirm.

## FACTS

George C. Moultrie, d/b/a George Moultrie & Associates, owned property on Rivers Avenue in Charleston County. Moultrie failed to pay federal income taxes, and the IRS filed a notice of a tax lien on his property in the amount of $89,789.10 on September 2, 1997, in the R.M.C. office for Charleston County. Moultrie died in 2001, and the IRS filed its claim with the probate court for Charleston County on July 2, 2002. Moultrie's state ad valorem taxes on the property for the tax year 2001 were not paid. Charleston County issued a tax execution for the 2001 taxes and directed the Charleston County Sheriff to levy by distress and sell the property at a non-judicial tax sale to satisfy the delinquent property taxes. Charleston County followed the statutory notice provisions and properly conducted a tax sale of the property on December 2, 2002. Steven Fox was the successful bidder and paid $14,000 for the property. It is undisputed that the IRS was not given notice of the tax sale. Neither Moultrie's estate nor the IRS attempted to redeem the property before the end of the statutory redemption period on December 2, 2003.

Fox was given a deed to the property on March 31, 2004. He initiated a declaratory judgment action on June 8, 2005, seeking to quiet title pursuant to the two-year statute of limitations. The named parties included Moultrie's estate, various Charleston County offices (collectively, the "County"), including the treasurer and tax collector, the United States Government acting through the IRS, the South Carolina Department of Revenue, and any other unknown heirs. The parties consented to having the case referred to a master-in-equity.

Although the County, the Department of Revenue, and the estate did not contest the tax sale, the IRS appeared at the February 15, 2006 hearing to contest the sale. The IRS argued that because they were not given notice of the tax sale pursuant to federal law and there was no application to discharge the tax lien, Fox purchased the property subject to the federal tax lien. At the time of the hearing on the declaratory judgment action, the parties estimated the outstanding federal lien, plus interest, had grown to $145,000.

After hearing arguments from the parties and reviewing their submitted briefs, the master-in-equity ruled the property was purchased subject to the IRS tax lien. The master noted that while the County followed all the *state* statutory notice procedures for performing a tax sale and the state statute did not require notice to be given to the federal government, federal law holds that federal tax liens survive a sale of the property where the federal government is not given notice of the sale. Fox, the County, and the Department of Revenue (collectively, "Appellants"), all appealed, and this Court granted the Court of Appeals' motion to certify the case.

## SCOPE OF REVIEW

An action to quiet title is one in equity. *Van Every v. Chinquapin Hollow, Inc.,* 265 S.C. 474, 477, 219 S.E.2d 909, 910 (1975). In an action in equity, tried with reference to a master, this Court reviews the evidence and determines the facts according to its own view of the preponderance of the evidence, though it is not required to disregard the findings of the master. *Friarsgate, Inc. v. First Fed. Sav. & Loan Ass'n,* 317 S.C. 452, 456, 454 S.E.2d 901, 904 (Ct.App.1995).

## DISCUSSION

Appellants all argue the master erred in interpreting federal law by holding it merely subordinated the federal lien. They argue the master erred by not recognizing the law provides that the federal lien is not valid when there is a local property tax lien on the property which is entitled to priority. Thus, they assert, since the lien was not valid, the failure to follow the federal notice provisions did not make the federal lien survive the sale.

In interpreting these statutes, we must look to the plain meaning. "If the statute is clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' ... The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress." *Bd. of Governors, FRS v. Dimension Fin. Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) (quoting *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *New York Times Co. v. Spartanburg County Sch. Dist. No. 7*, 374 S.C. 307, 310, 649 S.E.2d 28, 29–30 (2007) ("We cannot construe a statute without regard to its plain and ordinary meaning, and this Court may not resort to subtle or forced construction in an attempt to limit or expand a statute's scope."). In determining the plain meaning of a statute, the courts must look at the particular statutory language at issue and the language and design of the statute as a whole. *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403–05, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988); *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning.").

A county property tax becomes a first lien on real property and attaches at the beginning of the fiscal year in which the tax is levied. *Taylor v. Mill*, 310 S.C. 526, 528, 426 S.E.2d 311, 312 (1992); S.C.Code Ann. § 12–49–10 (2000). While there are strict statutory requirements for a valid tax sale, the parties do not dispute that the County properly followed those requirements and notified the delinquent taxpayer and any mortgagees of the tax sale. *See* S.C.Code Ann. § 12–51–140 (2000) (adopting notice requirements to mortgagees from section 12–49–220 to apply to non-judicial sales); S.C.Code Ann. § 12–51–40 (2000) (providing procedure for a levy of execution on delinquent taxpayer's property and notice to delinquent taxpayer); S.C.Code Ann. § 12–49–220 (2000) (providing that notice must be given to mortgagees twenty days before a tax sale). Nothing in the state statutes required

the County to notify the IRS of the tax sales. Thus, the key question is whether the federal tax laws hold that the federal tax lien survives the state tax sale where no notice of the sale was given.

■ When a person fails to pay a federal tax liability, the amount due becomes a "lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C.A. § 6321 (2002). This lien continues until the lien is satisfied or becomes unenforceable after a lapse of time. 26 U.S.C.A. § 6322 (2002). "The overriding purpose of the tax lien statute obviously is to ensure prompt revenue collection" because the "collection of taxes is vital to the functioning, indeed existence," of the government. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 734–35, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). Thus, the property "shall, except as otherwise provided, be made subject to and without disturbing" the federal lien if the United States recorded notice of its lien thirty days before the sale but the United States was not given notice [1] of the sale. 26 U.S.C.A. § 7425(b)(1) (2002).

However, in section 6323, entitled, "Validity and priority against certain persons," the federal government has provided ten instances where federal liens are subordinated in priority against certain persons, even where the United States has filed its notice of a lien. 26 U.S.C.A. § 6323 (2002); *see Hinkley & Donovan v. Paine,* 424 F.Supp. 1013, 1019 (D.C.N.H.1977) (interpreting section 6323 and stating "Congress very specifically provided for various kinds of transactions which would have priority even over filed tax liens"); *United States v. Amos,* 287 F.Supp. 886, 890–91 (D.C.Ill.1968) (interpreting section 6323(b)(6), as modified by the Federal Tax Lien Act, as rendering "federal tax liens junior to liens securing local real estate taxes, if such real estate taxes are entitled to priority under local law"). For example, an IRS

---

1. Under 26 U.S.C.A. § 7425(c)(1), the notice of a nonjudicial sale of property "shall be given ... in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary." The section further provides that the nonjudicial sale of the property "shall discharge or divest such property of the lien or title of the United States *if the United States consents to the sale* of such property free of such lien or title." 26 U.S.C.A. § 7425(c)(2) (2002) (emphasis added).

lien "shall not be valid" against: a purchaser of securities without notice of the lien; a purchaser of a motor vehicle without notice of the lien; a purchaser of personal property without notice of the lien where purchased at a retail establishment; a purchaser of personal property without knowledge of the lien where purchased at a casual sale for less than $1,000;[2] a holder of a possessory lien on personal property; a holder of a mechanic's lien on residential property for certain repairs and improvements where the contract price was less than $5,000;[3] an attorney who holds a lien or contract against a judgment for compensation; the organization which is the insurer of a life insurance, endowment, or annuity contract before the organization had actual notice of the lien; and an institution providing loans with respect to a savings deposit, share, or other account where the loan is made without knowledge of the lien. 26 U.S.C.A. § 6323(b)(1)-(5), (7)-(10) (2002). It is the sixth situation that is relied upon in this case, and it provides that a federal "lien shall not be valid":

> (b)(6) **Real property tax and special assessment liens.**— With respect to real property, as against a holder of a lien upon such property, if such lien is entitled under local law to priority over security interests in such property which are prior in time, and such lien secures payment of—
>
> > (A) a tax of general application levied by any taxing authority based upon the value of such property;

26 U.S.C.A. § 6323(b)(6)(A) (2002).

Appellants interpret section 6323(b)(6)(A) to mean that the lien on the property became *invalid* once the County took possession of the property to sell at a tax sale. Thus, they argue, because the lien was not valid as to the *property* pursuant to section 6323(b)(6)(A), and the County conveyed to Fox the interest it had in the property, free and clear of the federal lien, then Fox likewise took the property free and clear of the invalid lien. They further argue the "except as otherwise provided" language in section 7425 means that it only applies to valid liens. Therefore, since the present federal lien was invalid, the failure to give the IRS notice of the tax sale

---

**2.** This amount has recently been amended to $1,320. 26 U.S.C.A. § 6323(b)(4) (Supp.2008).

**3.** Likewise, this amount has recently been changed to $6,600. 26 U.S.C.A. § 6323(b)(7) (Supp.2008).

was of no consequence. Appellants extensively cite congressional history on these sections to support their argument that a county ad valorem tax sale extinguishes an IRS tax lien as to the property.[4]

While it is understandable how Appellants interpret the "shall not be valid" language in section 6323 to mean the lien was extinguished, their interpretation ignores the clear wording of the statutes themselves. Section 6323(b)(6)(A) provides protection for "*a holder of a lien upon such property,* if such lien is entitled under local law to priority ... and such lien secures payment of" a property tax. Nothing in section 6323 provides that the purchaser of a property subject to both a local property tax lien and a federal lien takes the property free of the federal lien. Congress certainly could have listed a subsequent purchaser in section 6323, but it opted not to.[5] This interpretation is also consistent with section 6322, providing that the federal lien continues with the property until the lien is satisfied. 26 U.S.C.A. § 6322 (2002).

Looking to other subsections within section 6323, Congress gave other indications that the phrase "shall not be valid"

---

4. The congressional history of section 6323 does show that Congress intended to protect certain individuals from being surprised by a federal tax lien that has not been filed, or "secret lien," and thus, certain entities were given priority over the federal liens. However, this history does *not* indicate that section 6323 was intended to extinguish the federal liens. In fact, the Congressional history regarding subsection (b)(6) specifically notes that local and state property taxes and assessments are given priority over federal liens. There is no indication that the liens were extinguished completely.

5. To illustrate their belief that the master's interpretation was erroneous, Appellants argue that it would be ridiculous for a federal lien, declared invalid by section 6323, to "spring back to life" upon the later resale by the entities entitled to priority in section 6323(b). They cite the example of an unknowing consumer purchasing socks from a store with a federal lien in place on the stock of the store. While we agree with Appellants that it would seem impossible, at best, for the IRS to attempt to recover on the lien should the consumer attempt to re-sell the socks, we are not asked to determine that question in this case. Real property is very different from mere personal property in that it is immovable and there are strict recording requirements in place. It is much easier for local and federal governments to keep track of real property—and for a prospective purchaser of property at a delinquent tax sale to be put on notice of any federal liens—by consulting the local R.M.C. office.

indicates *priority* of liens, not the total invalidation of a lien. Section 6323(e), entitled, "Priority of interest and expenses," provides that "[i]f the lien imposed by section 6321 *is not valid as against a lien* or security interest, the *priority* of such lien or security interest shall extend to" any interest or carrying charges on the obligation secured, the reasonable expenses incurred in collecting or enforcing the lien, and the amount paid to satisfy a lien with priority over a federal lien. 26 U.S.C.A. § 6323(e) (2002) (emphasis added).[6] Thus, in addition to giving certain liens priority, the section allows priority for the collection of fees and costs necessary to enforce the lien. The section makes clear that Congress intended the phrase "not valid against" to indicate priority. An IRS lien that is "not valid" against a local property tax lien does not evaporate once a local nonjudicial tax sale occurs.

Further, our courts have looked at this section and also determined that it provides for the *priority* of liens, not the extinguishment of them. In *Taylor v. Mill,* Taylor purchased property at a federal tax lien sale, failed to record his deed, and meanwhile, the same property was sold to someone else at a county delinquent property tax sale. In reviewing section 6323(b)(6), this Court noted that it provides that a county's tax lien has priority over a federal lien, and thus, Taylor purchased the property still subject to the county's lien. *Taylor v. Mill,* 310 S.C. 526, 528, 426 S.E.2d 311, 312 (1992). Thus, this Court has already noted that section 6323 operates to establish priority, not extinguish liens.

Interpreting all of the sections together, section 6323(b)(6)(A) provides that the federal lien is subordinated to the County's lien; it does not render the federal lien invalid as to the property itself or any other party. *See, e.g., In re*

6. Similar to the socks argument, Appellants also asserted at oral argument that it would be ridiculous to apply such an interpretation to the further transfer of property, such as where the State or County office decided to donate land seized for delinquent property taxes to the forfeited land commission. While we understand the argument, we believe the federal law is intended to do nothing more than allow both the local and federal governments to collect delinquent taxes. To allow a County's decision to transfer property instead of collect its lien to extinguish the federal lien would amount to a windfall to local and state governments. This is not something clearly intended by the law.

*Tabone, Inc.,* 175 B.R. 855, 859 n. 8 (Bankr.D.N.J.1994) (noting that section 6323(b)(6)(A) provides that the township's tax liens hold priority status over the federal lien); *Hinkley & Donovan,* 424 F.Supp. at 1019; *Amos,* 287 F.Supp. at 890–91. Thus, the federal lien remained valid and survived the County's tax sale.  Because the IRS was not given notice of the County's tax sale after the IRS had filed notice of its lien on the property, the lien attached to the property and Fox purchased the property subject to the lien.   26 U.S.C.A. § 7425(b)(1) (holding that where property subject to the IRS's timely filed lien is sold during a nonjudicial sale and the IRS is not given notice of the sale, the sale of the property is made subject to and without disturbing the lien).  While the County argues that interpreting the section in this manner will stifle tax sales, potential buyers must research tax sale property purchases and would be put on notice of any federal tax liens.[7]

■  Finally, Appellants argue that the master erred by not giving section 6323, a more specific statute, priority over section 7425, a general statute.  *See Capco of Summerville, Inc. v. J.H. Gayle Constr. Co.,* 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006) (holding that a specific statutory provision prevails over a more general one).  While this is a correct statement of the law, it does not appear this argument was ruled upon by the master, and thus, it is not preserved.  *Staubes v. City of Folly Beach,* 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (holding that issues not raised to or ruled upon by the lower court are not preserved for appellate review).

To summarize, there is controversy regarding whether the "shall not be valid" language from section 6323 applies to the property or to the entity imposing an ad valorem tax on the property, and whether it indicates the federal lien is extinguished or merely subordinated.  It is the opinion of this Court that section 6323 merely provides that the federal lien becomes subordinate to the local property tax lien, but the lien remains with the property.  The IRS properly filed notice of the lien with both the probate court and the Charleston

7.  In fact, proposed legislation was introduced in Congress in 2007 that would establish a national Federal tax lien registry so that persons buying property could check tax lien status on the internet instead of having to go the local R.M.C. office.  S. 2394, 110th Cong. (2007);  S. 1124, 110th Cong. (2007).  However, that has no impact on this case.

620

County R.M.C office, such that anyone researching the property would be aware it was subject to a federal tax lien. Because the lien was valid as to the property and no notice of the nonjudicial sale was given to the IRS, the sale to Fox was "subject to and without disturbing" the federal tax lien. 26 U.S.C.A. § 7425(b).

## CONCLUSION[8]

Our review of the federal law convinces us that the federal lien was merely subordinate to, and not extinguished by, the County's ad valorem tax lien. Because the federal government was not given notice of the nonjudicial sale, the law provides that the federal tax lien survived the sale. Accordingly, the master's order is

**AFFIRMED.**

MOORE, Acting Chief Justice, WALLER, PLEICONES, JJ., and Acting Justice JAMES E. LOCKEMY, concur.

---

8. The various Charleston County offices also argue that because the IRS failed to redeem the property during the redemption period, the federal lien was discharged in spite of the master's interpretation of federal law. While the question of whether the IRS's failure to redeem the property during the redemption period was before the master, it does not appear the master addressed the question in the order. It also does not appear that the parties filed a Rule 59(e), SCRCP motion to request that the master address the question. Thus, the issue is not preserved for appellate review and we decline to address it. *Staubes*, 339 S.C. at 412, 529 S.E.2d at 546.