705 S.E.2d 41

Sara Mae ROBINSON, Mary Ann Campbell, James Scott, Ellis Scott, William Scott, Shirley Pinckney Hughes, Julius Steven Brown, Leon Brown, Annabell Brown, Loretta Ladson, Kathleen Brown, Mozelle B. Rembert, Patricia Frickling, Ruth Mitchell, Gwendolyn Dunn, Angela Hamilton, Geraldine Jameson, Remus Prioleau, Julius Prioleau, Anthony Prioleau, Judy Brown, Franklin Brown, Kathy Young, Kenneth Prioleau, Willis Jameson, Melvin Pinckney, William "Alonzie" Pinckney, Ruth Fussell, Hattie Wilson, Marie Watson, Gloria Becoat, Angela T. Burnett, and Lawrence Redmond, Respondents,

v.

The ESTATE OF ELOISE Pinckney HARRIS, Jerome C. Harris, as Personal Representative and sole heir and devisee of the Estate of Eloise P. Harris, Daniel Duggan, Mark F. Teseniar, Nan M. Teseniar, David Savage, Lisa M. Shogry–Savage, Debbie S. Dinovo, Martine A. Hutton, The Converse Company, LLC, Judy Pinckney Singleton, Mary Leavy, Michelle Davis, Leroy Brisbane, Frances Brisbane, and John Doe, Jane Doe, Richard Roe and Mary Roe, who are fictitious names representing all unknown persons and the heirs at law or devisees of the following deceased persons known as Simeon B. Pinckney, Isabella Pinckney, Alex Pinckney, Mary Pinckney, Samuel James Pinckney, Rebecca Riley Pinckney, James H. Pinckney, William Brown, Sara Pinckney, Julia H. Pinckney, Laura Riley Pinckney Heyward, Herbert Pinckney, Ellis Pinckney, Jannie

Gathers, Robert Seabrook, Annie Haley Pinckney, Lillian Pinckney Seabrook, Simeon B. Pinckney, Jr., Matthew G. Pinckney, Mary Riley, John Riley, Richard Riley, Daniel McLeod, and all other persons unknown claiming any right, title, estate, interest, or lien upon the real estate tracts described in the Complaint herein, Defendants,

of whom the Estate of Eloise Pinckney Harris, Jerome C. Harris and Judy P. Singleton are Petitioners.

No. 26914.

Supreme Court of South Carolina.

Heard May 26, 2010.
Decided Jan. 24, 2011.

Edward M. Brown, of Charleston, for Petitioners.

Donald Higgins Howe, of Howe & Wyndham, of Charleston, George J. Morris, of Charleston, Walter Bilbro, Jr., of Charleston, for Respondents.

Charles M. Feeley, of Summerville, Guardian Ad Litem.

Justice KITTREDGE.

This is an heirs' property dispute regarding a ten-acre tract of land on James Island in Charleston County, South Carolina. The dispute came before the circuit court in February 2005, when Respondents brought an action to quiet title. The circuit court granted summary judgment to Petitioners. The court of appeals reversed. *Robinson v. Estate of Harris*, Op. No.2008–UP–705 (S.C.Ct.App. filed Dec. 16, 2008). We reverse the decision of the court of appeals and reinstate the circuit court's order granting summary judgment to Petitioners.

## I.

The facts of this case are, in significant part, the same as those set forth in the related matters of *Robinson v. Estate of Harris*, 388 S.C. 616, 698 S.E.2d 214 (2010); *Robinson v. Estate of Harris*, 388 S.C. 630, 698 S.E.2d 222 (2010); *Robinson v. Estate of Harris*, 388 S.C. 645, 698 S.E.2d 229 (2010) and *Robinson v. Estate of Harris*, 389 S.C. 360, 698 S.E.2d 801 (2010). As in these companion cases, the underlying dispute is about the identity of the true heirs of Simeon B. Pinckney. Simeon B. Pinckney owned a twenty-acre tract of land on James Island at the time of his death in the early 1920s. The companion cases concern a 4.3–acre tract derived from this property. At issue in this case is an adjacent ten-acre tract derived from the same property.

The ten acres at issue in this case were conveyed by Laura and Herbert Pinckney to Ellis Pinckney by deed dated October 26, 1946. Ellis Pinckney died in 1976. In his will, Ellis Pinckney bequeathed all of his personal and real property to

his daughters, Eloise Pinckney Harris and Isadora A. Pinckney, "to share and share alike." Isadora Pinckney served as executrix, and she was duly discharged of her duties by the probate court by Letters Dismissory dated January 9, 1978.

After Isadora Pinckney's death, Eloise Pinckney Harris served as the executrix for Isadora's estate. The probate court issued Letters Dismissory dated March 25, 1981 releasing Eloise Pinckney Harris from her duties. In addition, the probate court issued a "Devise/Descent of Real Estate and Description" on behalf of Isadora Pinckney, deceased, as grantor, to Eloise Pinckney Harris as the sole devisee and grantee. Through these circumstances, Eloise Pinckney Harris thus became the sole owner of the ten-acre tract now in contention.

The estates of both Ellis Pinckney and Isadora Pinckney were properly probated in the Charleston County Probate Court. Notice of the Letters Dismissory discharging the executrixes of the estates of Ellis Pinckney and Isadora Pinckney were given by publication. None of the Respondents filed any claims or objections regarding the estates pursuant to statutory requirements.

Eloise Pinckney Harris subsequently died, and her son, Petitioner Jerome C. Harris, was appointed as the personal representative of her estate. Eloise Pinckney Harris devised the bulk of her estate to Jerome C. Harris.

The dispute over ownership of the ten-acre area began in 2004 when Jerome C. Harris was appointed the personal representative of his mother's estate and reportedly sought to distribute the property to himself as the sole devisee. At that time, Respondents filed a petition to stay the issuance of a deed of distribution. Respondents claimed the property had been improperly willed to the decedent, Eloise Pinckney Harris, because her predecessors-in-interest, Isadora Pinckney and Ellis Pinckney, had no legitimate interest in the property.

Respondents filed an action seeking to quiet title to the ten acres. The essence of Respondents' complaint is that the 1946 conveyance to Ellis Pinckney was invalid. Specifically, Respondents claim their ancestor, Isabella Pinckney, was the only lawful wife of Simeon B. Pinckney and that Laura,

Herbert, and Ellis Pinckney committed fraud when they claimed to be Simeon's lawful heirs.

## II.

 The circuit court granted summary judgment to Petitioners because (1) Respondents' action was barred by South Carolina Code section 15-3-340 (2005) and (2) almost sixty years had passed since the conveyance to Ellis Pinckney and two estates were properly probated in Charleston County without any claims by Respondents. The court of appeals reversed and remanded, finding section 15-3-340 was not applicable to this case.[1] The court of appeals refused to uphold the circuit court's order on the basis of laches, finding "there is no mention of laches in the appealed order." While it is true the word "laches" does not appear in the circuit court order, we find it manifest that the circuit court considered, and relied on, laches. Moreover, we find this action, like the companion cases, is barred by laches. *See Hallums v. Hallums*, 296 S.C. 195, 198-99, 371 S.E.2d 525, 527 (1988) ("Laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done. Whether a claim is barred by laches is to be determined in light of [the] facts of each case, taking into consideration whether the delay has worked injury, prejudice, or disadvantage to the other party; delay alone in assertion of a right does not constitute laches." (internal citation omitted)).

## III.

The circuit court's order plainly referenced the excessive period of time that passed between the 1946 conveyance to Ellis Pinckney and Respondents' first objection to that conveyance in 2005. For example, the circuit court noted that Respondents "sat idlely [sic] by for a period in excess of fifty-

---

1. Section 15-3-340 provides: "No action for the recovery of real property or for the recovery of the possession of real property may be maintained unless it appears that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within ten years before the commencement of the action." Petitioners did not raise any issue with regard to the applicability of this statute in their petition for writ of certiorari.

five (55) years assumedly knowing that they may have a right in the real property of Ellis Pinckney." In addition, the circuit court observed that:

It has been almost sixty (60) years since the real property that is the subject of this action was conveyed to Ellis Pinckney. There is no provision in the Code of Laws of South Carolina that accords anyone the right, legally or equitably, to bring an action sixty (60) years after the fact. [Respondents] knew of their rights well in advance of this day. It was incumbent upon the [Respondents] to file the appropriate action in a court of competent jurisdiction to have those rights adjudicated.

Accordingly, we believe that the doctrine of laches formed a part of the circuit court's reasoning in dismissing Respondents' complaint. Under the circumstances presented, Respondents' inaction for many decades constitutes laches.

## IV.

Consistent with our decisions in the companion cases regarding the 4.3–acre tract derived from the same ancestor, we hold Respondents' action to quiet title was barred by the doctrine of laches. Accordingly, we reverse the decision of the court of appeals and reinstate the circuit court's order granting summary judgment to Petitioners.

**REVERSED.**

TOAL, C.J., and Acting Justices JAMES E. MOORE and E.C. BURNETT, III, concur. BEATTY, J., dissenting in a separate opinion.

Justice BEATTY, dissenting.

Sara Mae Robinson and others ("Respondents") brought this action against numerous defendants in a dispute over heirs' property. Three of those defendants, The Estate of Eloise Pinckney Harris, Jerome C. Harris, and Judy P. Singleton ("Petitioners"), have petitioned this Court for a writ of certiorari to review a decision of the Court of Appeals that reversed a circuit court order granting summary judgment to Petitioners on the ground the complaint was untimely. *See Robinson v. Estate of Eloise Pinckney Harris*, Op. No.2008–

UP–705 (S.C.Ct.App. filed Dec. 16, 2008) ("Harris/Singleton appeal"). We granted the petition for review and the majority has now reversed the decision of the Court of Appeals. I respectfully dissent.

## I. FACTS

The property at issue in this case is 10 acres located on James Island that was previously part of a 20–acre area owned by Simeon B. Pinckney at the time of his death in Charleston County in the early 1920s.[2] Simeon B. Pinckney died intestate, allegedly leaving a wife, Laura Pinckney, and two sons, Ellis and Herbert Pinckney, as his heirs.

The land held by Simeon B. Pinckney originated from a conveyance to him by deed executed in 1874 (and recorded in 1875) from Thomas Moore. The property was described as being 20 acres, more or less. In 1888, Simeon B. Pinckney conveyed 5 acres of this property to his wife, Isabella Pinckney, leaving approximately 15 acres. A survey conducted in 1923, however, found that exactly 14.3 acres remained.

By deed dated October 26, 1946, Laura and Herbert Pinckney conveyed 10 acres of this property to Ellis Pinckney. The 10–acre area is located in the western portion of the property formerly held by Simeon B. Pinckney. The dispute in this case concerns the ownership of these 10 acres.

In a contemporaneous deed also dated October 26, 1946, Laura and Ellis Pinckney conveyed 4.3 acres to Herbert Pinckney. The 4.3–acre area was located in the eastern portion of the land formerly held by Simeon B. Pinckney.

A clear title action was brought in 1966 regarding the 4.3–acre area conveyed to Herbert Pinckney, and a deed emanating from that action was recorded in the Register of Mesne Conveyances for Charleston County. None of the Respondents or their predecessors-in-interest filed responsive pleadings in that proceeding. The 4.3 acres is the subject of companion cases before this Court.

Ellis Pinckney, who had received the 10–acre area in dispute via the 1946 deed, died in 1976. In his will he be-

---

**2.** Simeon B. Pinckney's year of death is variously stated in the materials for this case as 1921, 1922, or 1923.

queathed all of his personal and real property to his daughters, Eloise Pinckney Harris and Isadora A. Pinckney, "to share and share alike." Isadora Pinckney served as his executrix, and she was duly discharged of her duties by the probate court by Letters Dismissory dated January 9, 1978.

After Isadora Pinckney's death, Eloise Pinckney Harris served as the executrix for Isadora's estate. The probate court issued Letters Dismissory dated March 25, 1981 releasing Eloise Pinckney Harris from her duties. In addition, the probate court issued a "Devise/Descent of Real Estate and Description" on behalf of Isadora Pinckney, deceased, as grantor, to Eloise Pinckney Harris as the sole devisee and grantee. Through these circumstances, Eloise Pinckney Harris thus became the sole owner of the 10–acre area now in contention.

The estates of both Ellis Pinckney and Isadora Pinckney were properly probated in the Charleston County Probate Court. Notice of the Letters Dismissory discharging the executrixes of the estates of Ellis Pinckney and Isadora Pinckney were given by publication. None of the Respondents filed any claims or objections regarding the estates pursuant to statutory requirements.

Eloise Pinckney Harris subsequently died and her son, Petitioner Jerome C. Harris, was appointed as the personal representative of her estate pursuant to the terms of her will. Eloise Pinckney Harris devised the bulk of her estate to Jerome C. Harris.

The dispute over ownership of the 10–acre area began in 2004 when Jerome C. Harris was appointed the personal representative of his mother's estate and reportedly sought to distribute the property to himself as the sole devisee. At that time, Respondents filed a petition to stay the issuance of a deed of distribution. Respondents claimed the property had been improperly willed to the decedent, Eloise Pinckney Harris, because her predecessors-in-interest, Isadora Pinckney and Ellis Pinckney, had no legitimate interest in the property.

While the probate of Eloise Pinckney Harris's estate was pending, Respondents filed the current action in the circuit court of Charleston County against Petitioners on February 1, 2005, seeking to quiet title to the property. The proceeding in

the probate court was stayed by order of the probate court dated July 1, 2005 pending resolution of the circuit court matter.

In an amended complaint, Respondents sought to quiet title to property located on James Island, South Carolina that was originally part of the estimated 20 acres acquired by Simeon B. Pinckney in 1874. Respondents asserted they were the only surviving, legitimate heirs of Simeon B. Pinckney and that they were the fee simple owners of the property described in an attached lis pendens. They sought an order confirming their title. Respondents stated partitioning of the property was "not feasible" and asked that the property be sold and the proceeds be distributed among Respondents.

Respondents alleged Isabella Pinckney was the only lawful wife of Simeon B. Pinckney. They contended Simeon B. Pinckney died intestate and was survived by a son, Samuel James Pinckney, and a daughter, Mary Pinckney, but no proceedings were ever commenced to probate Simeon B. Pinckney's estate.

Respondents claimed Laura, Ellis, and Herbert Pinckney were not the true heirs of Simeon B. Pinckney as Laura Pinckney was never Simeon B. Pinckney's legal spouse. Respondents asserted the three "executed and recorded cross deeds to attempt to fraudulently divide the ownership between Ellis and Herbert [Pinckney] of the remaining" 14.3 acres that Simeon B. Pinckney had owned at his death and that should have passed to his heirs by intestacy, Samuel James Pinckney and Mary Pinckney. Respondents alleged the three fraudulently misappropriated the 14.3 acres and took them from the true owners, who could not read and write and were not aware of the conveyances. Respondents maintained they are the true heirs of Simeon B. Pinckney through their ancestor Samuel James Pinckney.

Respondents contended that, as a result of fraudulent cross-deeds in 1946 by individuals who had no lawful interest in the property, the 10–acre area was eventually conveyed to the late Eloise Pinckney Harris, who during her lifetime attempted to convey 1.3 acres of the 10 acres to Petitioner Judy P. Singleton.

In their answer, Petitioners asserted the running of the statute of limitations[3], the closing of the administration of the estates of Ellis Pinckney and Isadora Pinckney, as well as laches, waiver, and estoppel.

Petitioners herein, the Estate of Eloise Pinckney Harris; Eloise's son and personal representative, Jerome C. Harris, who claimed to be Eloise's only heir; and Judy P. Singleton, who claimed she received a portion of Eloise's interest in the 10–acre area during Eloise's lifetime, filed a motion for summary judgment dated April 11, 2006 "based upon the relevant case law and statutory enactments."

A hearing on Petitioners' summary judgment motion was held on November 6, 2006.[4] At the hearing, counsel for Petitioners argued Respondents' complaint was barred by a statute of limitations that precluded claims for the recovery of real property after 40 years[5]; the time for filing a claim against an estate under the South Carolina Probate Code has expired for the two estates that have already been probated; and that Petitioners and their predecessors have occupied the property since at least 1922, so the complaint is barred by the doctrines of laches and waiver. Counsel argued Respondents sat "idly by" and were "asking this court by judicial fiat to … invoke or 'invent' a statute that allows them to now come in and claim their interest in this property."

---

3. A specific statute was not cited in the answer.

4. The November 6, 2006 hearing was held both to reconsider prior orders granting summary judgment regarding the 4.3 acres at issue in the companion cases, as well as to hear the motion for summary judgment concerning the 10–acre area at issue in the current (Harris/Singleton) matter.

5. Petitioners did not identify a specific statutory section during the discussion. However, section 15–3–380 of the South Carolina Code refers to a 40–year period. *See* S.C.Code Ann. § 15–3–380 (2005) ("No action shall be commenced in any case for the recovery of real property or for any interest therein against a person in possession under claim of title by virtue of a written instrument unless the person claiming, his ancestor or grantor, was actually in the possession of the same or a part thereof within forty years from the commencement of such action. And the possession of a defendant, sole or connected, pursuant to the provisions of this section shall be deemed valid against the world after the lapse of such a period.").

In contrast, Respondents argued the 1946 deeds were fraudulent and therefore void and could not convey legal title; further, they had no notice that the deeds existed. Respondents averred Ellis and Herbert Pinckney were not the sons of Simeon B. Pinckney and that Laura Pinckney was not his wife, which could be shown by an examination of the public record. Respondents declared "there was extrinsic fraud that was perpetrated by Laura Pinckney, Ellis Pinckney, and Herbert Pinckney" because "[t]hey have no relationship whatsoever to [Simeon B.] Pinckney, the true owner of the property[,] and Samuel James Pinckney, the only legitimate child who survived at his father's death."

In response, Petitioners argued the two Letters Dismissory from the probate court ending the administration of the estates of Ellis Pinckney and Isadora Pinckney constituted an adjudication of sorts on the property that is the subject of this litigation, as the property was the main asset in both estates, and the notice by publication in the newspaper provided due notice to all parties of the disposition of the property.

At the end of the hearing, the circuit court orally granted Petitioners' motion for summary judgment based on the 40–year statute of limitations referenced by counsel. Subsequently, the circuit court formally granted summary judgment to Petitioners by written order filed January 9, 2007, finding Respondents' lawsuit to quiet title to the 10–acre area was untimely, but cited a different statute of limitations. The Court of Appeals reversed in an unpublished decision. *Robinson v. Estate of Eloise Pinckney Harris*, Op. No.2008–UP–705 (S.C. Ct.App. filed Dec. 16, 2008). Petitioners filed a petition for a writ of certiorari seeking review of the decision of the Court of Appeals, which this Court granted.

## II. LAW/ANALYSIS

### A.

In its written order finding Respondents' lawsuit was untimely, the circuit court observed it was undisputed that two estates, those of Ellis Pinckney and Isadora Pinckney, "were properly and legally probated in Charleston County, [and Respondents] made no claims against either Estate." The

court further determined the current action was barred by section 15–3–340 of the South Carolina Code:

There can be no argument from these [Respondents] or otherwise that publication pursuant to the Probate statutes was not properly followed. It has been almost sixty (60) years since the real property that is the subject matter of this action was conveyed to Ellis Pinckney. There is no provision in the Code of Laws of South Carolina that accords anyone the right, legally or equitably, to bring an action sixty (60) years after the fact.

. . . .

Under section 15–3–340 of the Code of Laws of South Carolina, these [Respondents'] actions are barred. Section 15–3–340 states, *"no action for recovery of real property or recovery of the possession of real property may be maintained unless it appears that the Plaintiff, his ancestors, predecessors or grantors was seized or possessed of the premise in question within ten (10) years before the commencement of the action."* The individual[s] that possess the property that is the subject matter of this action, were not the ancestors, predecessors or grantors of the Plaintiffs [i.e., Respondents]. Specifically, Ellis Pinckney and his daughters, Isadora and Eloise Pinckney, exclusively possessed this property to the exclusion of all others for more than ten (10) years prior to the commencement of this action.

[Respondents] sat idly by for a period in excess of fifty-five (55) years assumedly knowing that they may have a right in the real property of Ellis Pinckney. Simeon Pinckney, the father of Ellis Pinckney, possess[ed] this property prior to 1923, the date of his death. If that figure is used as a starting point insofar as the statute of limitation is concerned, the [Respondents] waited for a period of eighty-five (85) years.

The purpose of the statutory scheme as set out by the Code of Laws of the State of South Carolina relative to the recovery of real property is to put an end to controversies about real property. There is no statute in the South Carolina Code of Laws which allows a Plaintiff to bring an action for recovery of property after a period of eighty (80) years.

Section 15–3–340, which was relied upon by the circuit court in its final, written order provides as follows:

No action for the recovery of real property or the recovery of the possession of real property may be maintained unless it appears that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within ten years before the commencement of the action.

S.C.Code Ann. § 15–3–340 (2005).

## B.

The Court of Appeals reversed the grant of summary judgment and remanded the matter for further proceedings in an unpublished opinion. *Robinson v. Estate of Eloise Pinckney Harris,* Op. No.2008–UP–705 (S.C. Ct.App. filed Dec. 16, 2008). As part of its initial analysis, the Court of Appeals first held the circuit court erred in finding the lawsuit was barred under section 15–3–340 because that statute is inapplicable. *Id.*, slip op. at 1. The Court of Appeals explained:

Whereas section 15–3–340 addresses actions for either the recovery of real property or the recovery of possession of real property, [the] amended complaint asserted the ownership interest[s] in the subject property asserted by the Estate of Eloise Harris and the devisees of Eloise Harris were based on "erroneous forgeries and fraudulent cross-deeds and devises." This allegation was the gravamen of [the] lawsuit insofar as it concerned the ten-acre tract. As such, any limitation period set by section 15–3–340 would be inapplicable.

*Id.* at 1.

In reaching this conclusion, the Court of Appeals cited *McKinnon v. Summers,* 224 S.C. 331, 79 S.E.2d 146 (1953), in which this Court held that a complaint for cancellation of deeds on the ground of forgery is distinguishable from an action for the recovery of real property and, thus, is not governed by the predecessor statute to section 15–3–340 (citing section 10–124 of the 1952 Code). *Id.* at 2. The Court of Appeals further stated that, even if Respondents' complaint was taken at face value as one to quiet title, the action would not be governed by section 15–3–340 because an action to

quiet title is in equity and statutes of limitations are not generally applicable to equitable actions, citing *Fox v. Moultrie*, 379 S.C. 609, 613, 666 S.E.2d 915, 917 (2008) ("An action to quiet title is one in equity."); *Parr v. Parr*, 268 S.C. 58, 67, 231 S.E.2d 695, 699 (1977) (stating statutes of limitation are generally not applicable in equitable actions). *Id.*

As a secondary point, the Court of Appeals noted the parties had addressed in their briefs the applicability of laches and the legal ramifications of Respondents' failure to file claims against the estates of Ellis Pinckney and Isadora Pinckney, but that "[n]either point, however, is a basis on which to affirm the appealed order." *Id.* at 2. The Court of Appeals stated the circuit court's reference to Respondents' failure to file claims against the two estates "was not presented as an independent ground for summary judgment, and there is no mention of laches in the appealed order." *Id.*

## C.

Petitioners contend the decision of the Court of Appeals should be reversed, arguing the circuit court properly granted their motion for summary judgment because there are no genuine issues of material fact and as a matter of law Respondents' complaint is untimely. I disagree.

Petitioners have not challenged the holding of the Court of Appeals regarding section 15–3–340. As a result, the ruling that section 15–3–340 is not applicable to bar Respondents' action and that summary judgment cannot be granted on that basis is final. *See ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche*, 327 S.C. 238, 489 S.E.2d 470 (1997) (stating an unchallenged ruling, right or wrong, is the law of the case).

Petitioners argue, however, the Court of Appeals erred in reversing the grant of summary judgment because Respondents' complaint was barred on the grounds of laches and/or waiver, and these grounds were implicitly included in the circuit court's order. Petitioners concede the circuit court did not use the terms "laches" or "waiver" in its order, but argue the court was referring to either or both of these concepts in its finding that "[t]he Plaintiff[s] sat idlely by for a period in excess of fifty-five (55) years assumedly knowing that they may have a right in the real property of Ellis Pinckney."

Petitioners note the circuit court also found the two estates, those of Ellis Pinckney and Isadora Pinckney, were properly probated without any claims or objections being filed. Petitioners argue that "given the broad language of the conclusion in the [circuit] [c]ourt's Order granting Summary Judgment to Petitioners, it is without question that there does exist, as evidenced by the very language of the Summary Judgment Order, an independent ground that was cited by the Trial Court as a basis for granting their Summary Judgment [motion]." Petitioners assert "[i]t is well established in South Carolina that the doctrine[s] of waiver and laches apply to actions such as in the instant case."

In contrast, Respondents contend the circuit court's written order was based solely on the statute of limitations set forth in section 15–3–340 and not upon the equitable defenses of laches and/or waiver. In support of this argument, they point to the transcript of the hearing in this matter where the circuit court stated Petitioners were entitled to summary judgment based "[o]n the statute of limitations." [6] They further assert that, even if the circuit court's order was implicitly based upon the equitable defenses of laches and/or waiver, the matter should be remanded for trial because the defenses have not been appropriately raised and supported by Petitioners.

I am persuaded by Respondents' arguments in this regard. After considering all of the circumstances, I believe the Court of Appeals correctly determined that the circuit court's order, while granting summary judgment based on the statutory ground of section 15–3–340, did not additionally rule upon any of the other grounds asserted by Petitioners. The circuit court referenced only a statute of limitations in its final, written order, without discussing the legal requirements to

---

6. At the end of the hearing in the current matter, counsel for Petitioners argued Petitioners were entitled to summary judgment. The circuit court stated, "On the statute of limitations you are." The court explained, "It's a forty-year statute, it's applicable." At the conclusion of the hearing, the circuit court reiterated that it was granting summary judgment based on a 40–year statute of limitations. This is notable because section 15–3–340, which is cited in the circuit court's final, written order, is not a 40–year statute, it is a 10–year statute. Therefore, it appears the circuit court was referring to a different statute, possibly S.C.Code Ann. § 15–3–380 (which provides for a limitations period of 40 years) during the hearing.

establish laches or any other theory set forth by Petitioners to bar Respondents' complaint.

As noted above, the circuit court expressly stated in its oral ruling from the bench that it was granting summary judgment based only on a "statute of limitations"; the citation for the statute was not discussed, but it was referred to as a 40–year statute. Since the final order clearly references a different statute than the one discussed at the hearing, it is apparent the circuit court changed the basis for its ruling to some extent.

However, it is not evident that the circuit court broadened its ruling to include laches and/or waiver. The circuit court did state at the hearing that it had expanded the basis for its order granting summary judgment in the companion cases so as to include laches. Nevertheless, it went on to orally rule that Petitioners were entitled to summary judgment based *solely* on a statute of limitations, without including laches or any other ground, even though the court had just discussed that additional ground in the context of the other, companion cases that concerned the 4.3–acre area. Although this oral ruling is not binding,[7] the circuit court's final, written order also omitted any discussion of laches as a basis for granting summary judgment, and it did not include an analysis of the legal requirements for establishing laches. Rather, it expressly cited and relied upon the statute of limitations set forth in section 15–3–340. Therefore, although the order is somewhat ambiguous, I agree with the conclusion of the Court of Appeals that the circuit court did not base its ruling on the doctrine of laches or any other theory as no other basis was clearly and fully developed in the circuit court's order.

---

7. *See, e.g.,* Rule 58(a), SCRCP ("Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and entered in the record."); *Ford v. State Ethics Comm'n,* 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001) ("Until written and entered, the trial judge retains discretion to change his mind and amend his oral ruling accordingly. The written order is the trial judge's final order and as such constitutes the final judgment of the court." (citation omitted)); *Doe v. Doe,* 324 S.C. 492, 501, 478 S.E.2d 854, 859 (Ct.App.1996) ("Judgments ... are not final until written and entered."). Similarly, the circuit court noted at the hearing in the current, Harris/Singleton matter that it had expanded upon its original grounds for granting summary judgment in the order in the companion cases concerning the 4.3–acre area that had been part of Simeon B. Pinckney's estate.

Moreover, even if the circuit court's order could be deemed to implicitly rule on laches or any other equitable theory asserted by Petitioners, such an implicit ruling, without any accompanying analysis or discussion, would not give this Court anything to review, and further development of the record is necessary in this regard. *See Able Commc'ns, Inc. v. S.C. Pub. Serv. Comm'n,* 290 S.C. 409, 351 S.E.2d 151 (1986) (stating implicit findings, as well as general statements and conclusions, do not provide sufficient detail to enable appellate review); *cf. Jones v. Lott,* 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010) (stating an appellate court should not be forced to "grope in the dark" to ascertain the precise nature of an issue on appeal); *Carey v. Snee Farm Cmty. Found.,* 388 S.C. 229, 694 S.E.2d 244 (Ct.App.2010) (vacating the trial court's grant of summary judgment and remanding the matter for additional factual findings and accompanying legal analysis where the basis for the trial court's grant of summary judgment could not be clearly determined from the record).

I am cognizant of the problems with heirs' property from both sides of the spectrum, i.e., the heirs whose ownership interests are infinitely difficult to untangle, and those who come many years after the events that gave rise to questions about ownership who desire the real estate records to have some sense of finality and reliability. A bright-line rule cannot be adopted setting forth an absolute time limit for such proceedings, as many variables are at stake, and even when legal statutes of limitation have expired, equitable considerations may come into play that cannot be determined from an undeveloped record. *Cf., e.g., Mr. T. v. Ms. T.,* 378 S.C. 127, 662 S.E.2d 413 (Ct.App.2008) (holding complicated decisions in family court proceedings cannot be made in a vacuum with an undeveloped record based on strict notions of finality).

Because this case comes before the Court in the posture of a party seeking summary judgment, the allegations in the complaint are deemed true for purposes of this analysis. In their complaint, Respondents alleged there was extrinsic fraud committed in connection with the 1946 deeds. "Extrinsic fraud is collateral or external to the trial of the matter." *Hagy v. Pruitt,* 339 S.C. 425, 431, 529 S.E.2d 714, 717 (2000). "It is fraud that 'induces a person not to present a case or deprives a person of the opportunity to be heard.'" *Id.* (quoting

*Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Comm'n*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987)). "Intrinsic fraud, on the other hand, is fraud presented and considered in the trial." *Id.* at 431–32, 529 S.E.2d at 718.

Under proper circumstances, an allegation of extrinsic fraud can be considered despite the existence of an applicable statute of limitations that would otherwise bar the claim. *Id.* at 431, 529 S.E.2d at 717. The avoidance of the statute of limitations does not mean, however, that an allegation of extrinsic fraud may be considered for an unlimited period, however, because the doctrine of laches will still apply in determining whether such an action may be maintained. *Id.* at 431 n. 7, 529 S.E.2d at 717 n. 7.

"In order to establish laches as a defense, a party must show that the complaining party unreasonably delayed its assertion of a right, resulting in prejudice to the party asserting the defense of laches." *Historic Charleston Holdings, L.L.C. v. Mallon*, 381 S.C. 417, 432, 673 S.E.2d 448, 456 (2009). It is an equitable doctrine. *Id.*; *see also Hallums v. Hallums*, 296 S.C. 195, 198–99, 371 S.E.2d 525, 527 (1988) ("Laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done. Whether a claim is barred by laches is to be determined in light of the facts of each case, taking into consideration whether the delay has worked injury, prejudice, or disadvantage to the other party; delay alone in assertion of a right does not constitute laches." (citation omitted)).

Although the circuit court stated Respondents should have filed an appropriate action in this case sooner, the court did not make specific findings of fact or analyze the requirements for establishing laches, and it would be unfair to hold as a matter of law that Respondents' complaint is barred on this basis or on any other equitable basis in light of the fact that the circuit court did not explicitly so rule, and in light of the fact that a question exists as to the applicability of an equitable defense. It is well-established that one who seeks equitable relief must act equitably in the first instance, and the allegation at issue is reportedly fraud and/or misconduct by Petitioners' ancestral predecessors-in-interest. *See generally*

*First Union Nat'l Bank of S.C. v. Soden,* 333 S.C. 554, 568, 511 S.E.2d 372, 379 (Ct.App.1998) (observing the doctrine of unclean hands precludes a party from recovering in equity if the party acted unfairly in the matter that is the subject of the litigation to the prejudice of the opposing party). Consequently, I would hold the circuit court erred in granting summary judgment to Petitioners and affirm the opinion of the Court of Appeals.