THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Anthony Quentin
 Scott, Appellant.
 
 
 

Appeal From Horry County
Edward B. Cottingham, Circuit Court Judge

Unpublished Opinion No. 2012-UP-043
Heard November 2, 2011  Filed January 25,
 2012
Withdrawn, Substituted and Refiled January
 31, 2012

AFFIRMED

 
 
 
Chief Appellate Defender Robert M. Dudek, of Columbia, for
 Appellant.
Attorney General Alan Wilson, Chief Deputy Attorney General John
 W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of
 Columbia; and Solicitor J. Gregory Hembree, of Conway, for Respondent.
 
 
 

PER CURIAM: 
 Anthony Quentin Scott was convicted of murder in the death of Efrain Rosado
 (Victim), and now appeals that conviction asserting (1) he was entitled to a
 directed verdict, as there was insufficient direct or substantial
 circumstantial evidence he was responsible for the murder and (2) he was
 entitled to an instruction on "criminal intent," which he did not
 receive.  We affirm.
We
 find no error in the trial court's denial of Scott's motion for directed
 verdict.  "A case should be submitted to the jury when the evidence is
 circumstantial 'if there is any substantial evidence which reasonably tends to
 prove the guilt of the accused or from which his guilt may be fairly and
 logically deduced.'"  State v. Bostick, 392 S.C. 134, 139, 708
 S.E.2d 774, 776 (2011) (quoting State v. Mitchell, 341 S.C. 406, 409,
 535 S.E.2d 126, 127 (2000)).  On appeal of the denial of a directed verdict of
 acquittal, the appellate court must look at the evidence in the light most
 favorable to the State, and absent a total failure of competent evidence as to
 the charges alleged, refusal by the trial judge to direct a verdict of
 acquittal must be affirmed.  Id.  at 139, 708 S.E.2d at 776-77.  Viewing
 the evidence in the case at hand in the light most favorable to the State, the
 State presented the following substantial circumstantial evidence which
 reasonably tended to prove Scott's guilt:  (1) On the evening of, and prior to
 Victim being shot, Williams and Scott arrived at Rudy's residence, nearby
 Victim's home, and Williams was heard on the phone, upset and addressing Victim
 by his name, stating "you don't play me like that," exclaiming on the
 phone, "I don't appreciate the way you talking to me, and, matter of fact,
 I might come down there right now," and then immediately telling Scott to
 leave with him, at which point Scott and co-defendant Williams left; (2) Scott
 and Williams were driving a white Ford Escort that night, and when they left
 Rudy's residence, the car was observed heading toward Victim's house and the
 car's brake lights came on when it pulled in front of Victim's house; (3)
 within thirty minutes of Williams and Scott leaving Rudy's and heading toward
 Victim's house, Victim was discovered in his injured condition; (4) shortly
 after Rudy found the injured Victim, Scott and Williams returned to Rudy's
 home, where they were observed carrying guns, and Scott in particular was seen
 carrying a rifle which was identified as the one found in the wood line behind
 Williams' mother's home at the time Williams and Scott were located and
 arrested at the home; (5) the bullet causing the fatal injury to Victim,
 although not conclusively matched to the rifle in question, was determined to have
 been fired from a weapon similar to the rifle carried by Scott that night; (6)
 two shell casings were recovered from the white Ford Escort belonging to and
 being driven by Scott and Williams on the night in question, the two shell
 casings were conclusively determined to have been fired from the weapon carried
 by Scott that evening, and Victim suffered two gunshot wounds that night; and
 (7) when Scott and Williams returned to Rudy's house and the discussion arose
 regarding Victim having been injured, Williams expressed disdain for Victim. 
 Although Scott and Williams were not placed at Victims home at the exact time
 of the shooting, they were placed near scene of the crime within the condensed
 time frame that Victim was shot, and that, along with the other evidence
 concerning Williams' and Scott's actions and words that night and the ballistic
 evidence, raised more than a mere suspicion of Scott's guilt and was sufficient
 to submit the matter to the jury.
Due
 to the lack of specificity as to the charge Scott sought on criminal intent at
 his trial, as well as his failure to specify in his brief the exact deficiency
 in the trial court's charge as to "criminal intent" law, we find no
 prejudicial error in the trial court's failure to charge the same.  See Kline
 Iron & Steel Co. v. Superior Trucking Co. 261 S.C. 542, 549-50, 201
 S.E.2d 388, 391-92 (1973) (holding, where appellant challenged the trial
 court's failure to instruct the jury as to principles governing liability for special
 damages, "assuming that there was a request for an instruction as to
 special damages, the contents thereof [were] not included in the record and the
 court, therefore, [could not] review the request to determine whether the lower
 court erred in refusing it"); Wren v. Kirkland Distrib. Co., 250
 S.C. 178, 181-82, 156 S.E.2d 865, 866 (1967) (noting an appellate court will
 not review a trial court's failure to give a requested charge where the
 contents of the charge do not appear in the record); see also Robinson
 v. Estate of Harris, 391 S.C. 114, 130, 705 S.E.2d 41, 49 (2011) (noting "an
 appellate court should not be forced to 'grope in the dark' to ascertain the
 precise nature of an issue on appeal"); Jones v. Lott, 387 S.C.
 339, 348, 692 S.E.2d 900, 904 (2010) (holding an issue raised by Petitioner which
 was not concise and direct, but rather was a broad general statement, ought to
 be disregarded by the appellate court).  Scott only cites to general law
 regarding "criminal intent" in his brief, but fails to discuss how
 any of this law is applicable to, and was required by, the facts of his case. 
 Scott does not argue how he was prejudiced by the failure of the trial court to
 give a general "criminal intent" charge.  Further, he does not argue
 how the charge, as given, failed to cover the law on criminal intent.  Thus, we
 hold Scott failed to show both error and prejudice, as Scott has failed to
 establish that he was prejudiced by the failure of the trial court to give any
 particular jury instruction on "criminal intent."  See State
 v. Burkhart, 350 S.C. 252, 261, 565 S.E.2d 298, 303 (2002) (holding it is
 the substance of the law that must be charged to the jury and, to warrant
 reversal, a trial judge's refusal to give a requested jury charge must be both
 erroneous and prejudicial to the defendant).
For
 the foregoing reasons, Scott's conviction is
AFFIRMED.
HUFF, PIEPER and LOCKEMY, JJ., concur.